# DAVIS, Appellant, v. BARADA-GHIO REAL ES-TATE COMPANY, Respondent.

## St. Louis Court of Appeals, December 12, 1905.

1. **VENDOR AND PURCHASER: Breach of Contract to Convey: Offer to Perform.** In an action to convey real estate upon the payment of the purchase money, the vendor's agreement to convey a clear title and the purchaser's agreement to pay are concurrent and dependent conditions, so that the purchaser must have tendered performance before he has a right of action for damages against the vendor for failure to perform.

2. ——: ——: **Waiver.** In a contract to convey a clear title to real estate, the purchaser is not bound to insist upon the removal of mortgages upon the real estate but may waive that condition by making no objection to the payment of the mortgages out of the purchase money paid by him.

3. ——: ——: **Tender.** And on the other hand, the purchaser is not obliged to tender the purchase price if he has funds available and offers to pay and the vendor does not insist upon an actual tender; the offer to pay under such circumstances will lay a foundation for an action against the vendor for breach.

4. ——: ——: **Appellate Practice: Weight of Evidence.** In an action by a purchaser of real estate for damages for breach of the contract to convey on the part of the vendor, where the evidence was conflicting as to whether there was an offer to perform by the purchaser so as to lay a foundation for the action, the action of the trial court in setting aside the verdict as against the weight of evidence cannot be reviewed by the appellate court.

5. ——: ——: **Time the Essence of a Contract.** A contract for the conveyance of real estate provided for a cash payment of $1,500 and another payment of $1,500 in thirty days, and the remainder in sixty days, and the contract further provided that the option should end in thirty days, and if the purchaser should fail then to perform, the first $1,500 paid should be forfeited. *Held*, time was the essence of the agreement only until the first two payments were made, and, those having been made promptly, the contract lost its optional character and remained thereafter open for performance by either party so that there could be then no forfeiture of the amount paid.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED AND REMANDED.

*G. B. Webster* for appellant.

The appellant was not obliged to pay or tender before his vendor was in a position to convey a good title. Pursley v. Good, 94 Mo. App. 382, 68 S. W. 218; Devore v. Devore, 138 Mo. 187, 39 S. W. 68; McLeod v. Snyder, 110 Mo. 302, 19 S. W. 494; Thompson v. Dickerson, 68 Mo. App. 541; Washington v. Ogden, 1 Black (U. S.) 450; Thompson v. Craig, 64 Mo. 317; Swan v. Drury, 22 Pick. (Mass.) 485; Critchett v. Cooper, 65 N. H. 167; Webster v. Trust Co., 145 N. Y. 275.

*Collins & Chappell* for respondent.

Instruction No. 1 given by the court of its own motion was erroneous in that said instruction failed to require the jury to find that the plaintiff had tendered the balance of the purchase money to the defendant. Bishop on Contracts, pp. 1433-1440; Comstock v. Lagers, 78 Mo. App. 391; 22 Ency. of Plead. and Prac. 756; Zilhen v. Smith, 148 N. Y. 558; Englander v. Rogers, 41 Cal. 420; Heine v. Treadwell, 72 Cal. 217; Bailey v. Lay, 18 Colo. 405; Vankirk v. Talbot, 4 Blackf. (Ind.) 367; Harvey v. Trenchard, 6 N. J. L. 126; Ockley v. Richmond, 10 N. J. L. 304; Johnson v. Applegate, 1 N. J. L. 271; Parker v. Parmlee, 20 Johns. (N. Y.) 130; Johnson v. Weggant, 11 Wand. (N. Y.) 49; Lester v. Jewett, 11 N. Y. 453; Campbell v. Gettings, 19 Ohio 347; Bank v. Haynes, 1 Pet. (U. S.) 455; Howell v. Stewart, 54 Mo. 404; Readbough v. Hart, 61 Ohio St. 73.

STATEMENT.—A written contract was executed May 16, 1901, by the Barada-Ghio Real Estate Company, party of the first part, and Lloyd B. Stephenson, party of

the second part, for a sale by the first party to the second of a tract of land, part of which lay inside and part outside the corporate limits of the city of St. Louis. The tract was known as North's Forest Park Summit. The contract provided for a cash payment of $1,500 on the execution of the instrument, another payment of $1,500 in thirty days from that date and the remainder of the purchase money ($22,000), in sixty days from the same date. The Barada-Ghio Real Estate Company bound itself to convey by "a good and sufficient warranty deed, free and clear, "all the property except certain lots already sold, on full payment of the purchase money at the time stated. The contract concluded with this paragraph:. "If at the end of thirty days this option is not accepted by said L. B. Stephenson, his legal representatives, or assigns, then the sum, to-wit; $1,500, this day paid, shall be forfeited to said Barada-Ghio Real Estate Company." Stephenson made the first payment on the date the contract was executed, and the second on the 14th of the following June and within thirty days. He then went to Virginia on a trip and left the transaction in the hands of his agent, John C. Hall; but testified that he had arranged with the Missouri Trust Company, where he had $50,000 worth of bonds deposited, to advance the money needed to complete the payment of the price, the trust company to hold his bonds as collateral security for the loan. The testimony shows the bonds were ample security and that the trust company had the money on hand to lend. Stephenson was uncertain whether he made the arrangement with the trust company before he went to Virginia or afterwards; but was positive that he made it either personally, before leaving St. Louis, or by letter after he left. Mr. Hall and A. L Schultz were interested in the sale with Mr. Stephenson. The deal never was consummated and on September 19, 1902, after the land had been sold under a deed of trust executed in 1892, this action was instituted by Walter N. Davis, as assignee of Stephenson's rights under the con-

tract, to recover damages from the defendant for failing and refusing to perform its agreement. Besides alleging the matters we have stated, the petition avers that on July 14, 1901, plaintiff and his assignors were ready and willing to perform the agreement on their part, in all respects remaining unperformed, and on said date offered to accept a conveyance of said property and then and there tendered to the defendant the remainder of the consideration agreed to be paid, but the defendant refused to carry out the contract, and refused to convey the property to the plaintiff or his assignors; that defendant could not at that time, nor at the time the suit was instituted, convey a good title to the ground for the reason that it was incumbered by certain deeds of trust, which are designated, and was afterwards, on January 25, 1902, sold to foreclose one of the deeds of trust, purchased at said sale by Arthur Kocian and immediately incumbered by him for about $9,000. The petition further charges that at the date of the breach of the contract by the defendant, the land was of the value of $60,000, and plaintiff was damaged in, the sum of $38,000 by the breach. The contract of sale was assigned by the vendee Stephenson to John C. Hall, July 1, 1901, and by Hall to plaintiff Davis on July 16, 1901.

The evidence shows that at the time the contract was made the property was incumbered by two deeds of trust executed by John M. North and wife; one to Charles Coffall's trustee, dated January 11, 1892, to secure a note for $8,000 and certain interest notes; the other to George Hruska's trustee, dated October 17, 1898, to secure a note for $6,700 and certain interest notes. The evidence before us shows that the property was sold under the first of those deeds of trust January 25, 1902; but does not show whether the purchaser was, as plaintiff alleged, Arthur Kocian, or some one else. At present it is not material who bought the land; but there might be a contingency in which it would be material that defendant did not lose control of the land by the sale, so

that it could not convey as agreed. At the date of the contract of sale to Stephenson there was another apparent incumbrance on the property, consisting of a mortgage or deed of trust executed in 1857. This instrument appears to have produced some dispute between the parties about the state of the title; but it is not referred to in the petition and, hence, is unimportant in disposing of the appeal. As we gather, either it had been paid or was barred by the statute of limitations.

The evidence conflicts on the issue of why the transaction failed. The testimony for the plaintiff goes to show that he, or his assignors, were ready and willing to pay the remainder of the purchase money within sixty days, as stipulated, and offered to do so on the tender of a deed conveying a clear title; that the defendant failed and refused to tender such a deed, tendering instead one which left the land subject to the two deeds of trust mentioned in the petition, and refused to clear it of those deeds of trust, until the purchase money was paid.

The evidence for the defendant goes to show that the plaintiff's assignors, Stephenson and Hall, were unable to raise the balance of the purchase money and never did raise it or offer to pay it, though payment was frequently demanded by Mr. Hruska, as president of defendant company. Hruska testified to tendering a deed several times; stating, as we understand, that he had paid off the smaller of the two deeds of trust and had it in his pocket, but not satisfied of record. He said he did not tell Mr. Hall, who attended to the affair for Mr. Stephenson, that he had paid it. Hruska admitted the $8,000 deed of trust had not been satisfied, but said he intended to pay it and did not have to rely on the purchase money to do so; as he could get the money from the St. Louis Union Trust Company. The effect of Hruska's testimony on this point is that Hall raised no objection to concluding the trade on account of the deeds of trust being unpaid, but said he (Hall) was unable to procure the

balance of the purchase money.   We shall copy a portion of the testimony of the two witnesses on this point.

John C. Hall swore as follows: "I am in the real estate business in St. Louis and have been for eleven years; I am the same John C. Hall mentioned in the assignment from L. B. Stephenson. I think the first payment on this assignment was made by Mr. Schultz taking the check up to the defendant's office and having the contract signed then; but I am not sure of that.   I took the second check up and delivered it to the Barada-Ghio office on Tenth and Chestnut streets. This is my writing on the contract where they receipt for it, except the last clause, which, I think, was written by Mr. Hruska.   He called his son up, who he said, held the title, and had him sign the receipt.   I don't recollect when Major Stephenson left the city, but it was early in July.   He told me when the time was up and the proper deed was made, to go down to the Missouri Trust Company and get the money and close it up.   I went there several days before the last day of the contract to see if everything was all right, and spoke to Mr. Frederick about it; he had just been elected secretary, and he didn't seem to know anything at all.   I thought there was no use talking to him, so I went back to Mr. Faulhaber, who was treasurer of the company and seemed to be the principal officer.   He said it was all right.   I think Mr. Frederick thought it was all right, but he didn't know about it.   I mean by its being all right that I could get the money when a proper deed was ready. On the last day of the contract Mr. Hruska came in the office and tendered me a deed, but before that we had the abstract run down by the Missouri Trust Company and there seemed to be a flaw in the title.   Mr. Hruska came in and handed me a deed, and said, this is the deed to the land and asked for his money.   I told him something was the matter with the abstract and we could not pay until that was straightened up.   I don't think he said anything about the flaw on that day, but I said;

'Have you cleared the property off?' and he said; 'No, there is an $8,000 deed of trust on it.' I said, 'Why don't you pay that off?' and he said; 'We are going to use your money to do that.' I remember him saying that well, and I think that is all that occurred that day. I did not accept the deed, and I certainly must have given him a reason. I felt that Major Stephenson was out of the city, and I wanted to be absolutely sure, in paying his money out on this thing, that it was all right, and it didn't seem to me it was right. I am familiar with the values of real estate in St. Louis."

Cross-examination: "I certainly did speak to Mr. Hruska about the defect shown in the certificate of title. To be sure about it I had gone to August Gehner and had him run it down and he reported the same defects. Mr. Hruska said about the $8,000 deed of trust, 'We will take that up out of your money,' or words to that effect. I was not willing that he should pay this off out of the purchase money because he had not complied with his agreement. Mr. Hruska tendered me a deed, but I could not say that it was on the 14th of July; he tendered it to me once afterwards, several weeks, and I refused it on the same grounds. Hruska urged me to close the deal and I urged him to close it. I always declined because he didn't do what he agreed to do. I don't think I ever applied to him for an extension of time. I never told him that Stephenson had not provided the money."

Mr. Hruska testified: "In 1901 I was president of the Barada-Ghio Real Estate Company, and am still. After the payment of the second sum of $1,500 on this contract, and before the 14th day of July, 1901, Mr. Hall asked for further time for the last payment, and said he could not get the money; that the Missouri Trust Company had promised it, but made an excuse that they didn't have sufficient money on hand to advance it; that was the last payment that was due. Neither Mr. Hall nor Mr. Stephenson nor Mr. Davis ever offered to pay the balance of the purchase price, although I requested

it more than once. I met Hall on the street and asked him about it, and he said: 'Well, I am not able to get that money. If I can't arrange it very soon I will surrender the contract to you.' I tendered Mr. Hall a deed to this property from George Hruska, who held the title at that time. This is the deed that I offered (producing Exhibit 'B') ; it is dated July 15, 1901. At that time Mr. Hall said that he couldn't arrange for the money. I told Mr. Hall the deed of trust shown on the abstract was barred by limitation. There was nothing said between me and Mr. Hall about the two North deeds of trust. I didn't have to pay these two deeds of trust out of the purchase money. I had arrangements with the St. Louis Trust Company to advance me any amount of money I wanted, and I told Mr. Hall so. Mr. Hall didn't raise any objection to the deeds of trust not being paid off. The $8,000 deed of trust was owned by Mr. Dolph. The question did not come up between Hall and me about those deeds of trust; I never thought there was any question about it. Mr. Hall said the reason he didn't close it up was he couldn't get the money. I made more than one tender of the deed to Hall; I think, the second tender was in September of the same year. I have since talked to Mr. Hall and am willing to give him a deed. I don't want the property; I want to give him the property, and my attitude to-day is the same. I have been ready to perform the contract ever since it was made; I don't want any man's $3,000 for nothing."

There was testimony bearing on the issue of whether Stephenson had arranged to borrow the purchase money so that it was available for use by Hall when a good title was offered.

The court, at the request of the plaintiff, gave the following instruction:

"The court instructs the jury that the burden of proof in this case is on the defendant to show that the plaintiff's assignor, John C. Hall, waived his right to demand from the defendant a warranty deed conveying

the real estate mentioned in this evidence, free and clear of all incumbrances, and unless the defendant has satisfied the jury by the preponderance or greater weight of evidence, that such right was waived by said Hall, the jury must return a verdict in favor of the plaintiff."

At the request of the defendant the court gave the following instruction:

"The court instructs the jury that, although they may believe from the evidence that the deed of trust from James M. North and wife to Charles Coffall's trustee, dated January 11, 1902, and the deed of trust from Ruth North and husband to George Hruska's trustee, dated October 17, 1898, were, on July 15, 1901, liens upon the real estate described in the contract sued on, they will find their verdict in favor of the defendant, if they further believe and find from the evidence that the plaintiff, or John C. Hall, prior to July 15th, knew of the existence of said deeds of trust, and if they further find that defendant proposed to said Hall to pay off and satisfy said deeds of trust out of the sum of $22,000, mentioned in the contract sued on, provided they further believe from the evidence that said Hall consented thereto, or did not object thereto."

Of its own motion the court gave the following instructions:

"The court instructs the jury that if they find and believe from the evidence: first, that on the 16th of May, 1901, the defendant agreed in writing to sell to L. B. Stephenson all of that certain tract of land lying partly in the county and partly in the city of St. Louis, known as North's Forest Park Summit, except certain designated lots in block No. 6 thereof, for the sum of $25,000, payable $1,500 at that time, $1,500 in thirty days thereafter, and the balance in sixty days thereafter, and to convey the same by good and sufficient warranty deed free and clear from any incumbrances or liens; second, that said Stephenson thereupon paid to defendant the sum of $1,500, and thereafter, within thirty days

from said 16th day of May, 1901, paid to defendant the further sum of $1,500; and, third, that on or about the 1st day of July, 1901, said Stephenson assigned all his right and interest in and under said contract to John C. Hall and that John C. Hall was, at the expiration of sixty days from May 16, 1901, ready, willing and able to pay the balance of said purchase price; and, fourth, that the defendant was unwilling, or unable to convey a good title to the said real estate, free and clear from incumbrances, or liens; and, fifth, that thereafter said Hall transferred all his right and interest in, and under said contract to plaintiff, then the verdict should be for the plaintiff.

"If you find from the evidence that on July 15, 1901, or at any time prior thereto, John C. Hall, acting for himself, or his assignor, Stephenson, had the title to the property in question examined, and after such examination, said Hall objected to the title because of the deed of trust thereon of 1857, and at said time Hall knew that the $8,000 and the $6,700 deeds of trust were then on the property, and also knew that the defendant was ready, able and willing to pay off and discharge said $8,000 and $6,700 deeds of trust; and if you further find at said time Hall made no objection to the title, except on account of the 1857 deed of trust, and if you further find as a fact from the evidence, that the defendant was able, willing and ready to pay off said $8,000 and $6,700 deeds of trust, provided said Hall was ready, able and willing to pay the balance of the purchase price, your verdict should be for the defendant; if as a matter of fact, you find from the evidence that said Hall was ready, willing and able to pay said balance of the purchase price.

"The court instructs the jury that the only outstanding incumbrances on the property in controversy on July 15, 1901, were the two deeds of trust read in evidence, the one for $8,000 and the other for $6,700. The court instructs you that there is no evidence in this case that the deed of trust of 1857, mentioned in evi-

Davis v. Barada-Ghio Real Estate Co.

dence, was an incumbrance on the land, and said 1857 deed of trust did not constitute any defect in the title. The plaintiff and his assignor, Hall, had the right to refuse to pay the balance of the purchase price, unless the defendant was ready, willing and able to pay off and discharge the $8,000 and the $6,700 deeds of trust, certified copies of which are in evidence before you. If you believe from the evidence that defendant was ready, able and willing to discharge and pay off said deeds of trust at the time defendant tendered the deed of conveyance to Hall, provided said Hall was then ready to pay the balance due on the purchase price; and if you further find that said Hall was not then ready, or able to pay off the said balance due on the purchase price, your verdict should be for the defendant.

"The court instructs the jury that the question of how much money, if any, was paid by plaintiff to Hall in consideration of the assignment of the contract in controversy, or how much money, if any, was paid by Hall to Stephenson in consideration of the assignment of said contract, is not involved in any way in this case. Stephenson had the right to assign the contract to Hall, and Hall had the right to assign the contract to plaintiff. The assignments mentioned in this instruction in no way affect the right of either party to this suit under the contract dated May 16, 1901, and read in evidence before you."

There were some other instructions not relevant to the points raised on appeal.

The jury returned a verdict for the plaintiff, assessing his damages at $3,000. In due time a motion for new trial was filed and afterwards sustained because the trial court thought the verdict was against the weight of the evidence and that there was error in the first instruction given on his own motion. Plaintiff excepted to the order granting a new trial and appealed from it.

GOODE, J. (after stating the facts).—The conflict in the testimony bearing on certain issues is admitted by counsel for plaintiff; but the position taken is that, notwithstanding this conflict, the verdict was manifestly for the right party, inasmuch as the plaintiff was entitled to a direction for a verdict in his favor. In support of this position it is argued that all the facts essential to plaintiff's right to recover were admitted. The essential facts are said to be: The execution of the contract, the two payments by plaintiff on the purchase price, the existence of incumbrances on the property exceeding $14,000, until long after the sixty days stipulated for performance had expired, and the assignment of Stephenson's rights under the contract to the plaintiff. It is true those facts were admitted; but in our opinion the proposition that they entitled the plaintiff to a verdict is unsound. It was necessary to show further that Stephenson was ready and willing to perform the contract on his part and offered to do so. It is argued for the plaintiff that no offer of the kind was incumbent on Stephenson and those interested with him, for the reason that Stephenson was under no obligation to offer the final payment until the defendant tendered a deed conveying a clear title. That is to say, the defendant was bound to move first in the matter of performance; and as it never tendered a deed which constituted performance of the condition on which Stephenson had agreed to pay, he was never in default, and, hence, can maintain this action. Stephenson's agreement to pay and the defendant's agreement to convey a clear title were concurrent and dependent conditions, and performance, or an offer to perform, by either party was essential to put the other in default and lay the foundation for an action by the party who had performed, for damages or to enforce performance. [Guthrie v. Thompson, 1 Oregon 353; Low v. Marshall, 17 Maine 232; Leard v. Smith, 44 N. Y. 618; Irvin v. Bleakley, 7 Pa. St. 24.] It is not the law that a right of action accrued on the con-

tract in favor of Stephenson from the mere fact that the defendant tendered no sufficient deed, if Stephenson never offered to pay the purchase money. How did the defendant default under those circumstances? In a case like this the law requires the party seeking relief, whether vendor or vendee, to show he did his duty. If the Barada-Ghio Real Estate Company had sued Stephenson, it would have been required to prove it had offered to convey a clear title. [Hauffman v. Hunter, 3 Green (N. J.) 83.] The plaintiff was equally bound to prove Stephenson offered to pay the purchase money on receipt or tender of a deed conveying a clear title. [Cases supra.] Now Hall's testimony conduced to show such an offer was made on behalf of Stephenson, but Hruska's testimony was to the contrary. In our opinion Stephenson was entitled to demand a clear title and the defendant had no right to insist on full payment before it discharged the incumbrances. [Webster v. Trust Co., 145 N. Y. 275.] But either party might waive the right enjoyed as to these details of performance. [Id.] Stephenson, or his agent Hall, was not bound to insist on the title being clear before payment was made; and if, as Hruska swore, Hall raised no objection to paying the money on that score, but was willing to pay, if he could procure it, and let the incumbrances be lifted afterwards, he did waive the point. Neither was Hruska bound to insist on a tender of cash by Hall; but might content himself with an offer to pay without a tender of the money. And if, as Hall swore, Hruska raised no objection to the offer to pay on the score that the money was not tendered, but insisted on Stephenson's supposed duty to pay before the deeds of trust were lifted, Hall's offer of payment, if he had funds available to make the offer good on receipt of a clear title, was a sufficient performance. Therefore, it will be seen that the questions of a tender of cash by Stephenson, or a clear title by defendant, do not control the case; for there is no unity of evidence to the effect that either party insisted on a tender.

Hall swore he insisted on a tender of clear title which Hruska refused until the money was paid; whereas Hruska swore that Hall, instead of challenging the state of the title, declared his inability to raise the money. It follows that one essential fact in the case had to be determined on contradictory evidence; therefore the court's action in setting aside the verdict as against the weight of the evidence, cannot be reviewed by us.

The learned trial judge thought he erred in the first instruction given on his own motion, because the jury was not required to find Stephenson tendered payment. What we have said above will indicate our opinion on this point. If Stephenson was willing and able to pay the purchase money and offered to do so, and Hruska raised no objection to the offer because the cash was not proffered, the offer itself was performance by Stephenson. [Parker v. Perkins, 8 Cush. 318; Irwin v. Gregory, 13 Gray 215; Smith v. Lewis, 24 Conn. 624; s. c., 26 Conn. 110; Smoot v. Pea, 19 M'd. 398.] The case of Pursley v. Good, 94 Mo. App. 382, 68 S. W. 218, is unlike this one; for there was no evidence in it going to show either that Good, who asserted a default by Pursley, had tendered a conveyance to Pursley, or otherwise offered to perform, so as to put the latter in default; or that Pursley had said or done anything tending to show he waived any legal right he held against Good.

The contract between Stephenson and defendant provided for no forfeiture except of the first payment on the contingency that the second one was not made when due. Time was of the essence of the agreement as to the first two payments; and those having been made promptly, it strikes us that the contract remained open afterwards for performance by both parties. Its optional feature was eliminated by the second payment, and it then stood as a binding obligation of sale and purchase. Now the provision regarding forfeiture for default in meeting the second payment, argues for the interpreta-

tion that time was not of the essence of the stipulation for further performance and that no forfeiture for delay therein was intended. If this is correct, then after the contract had lost its optional character, defendant was not entitled to keep the payments in case of a breach by Stephenson, but only to be made whole for the damages sustained by the breach. It had no right to retain the payments on the theory that they were forfeited, but might have had the right to retain them to cover its loss on account of a breach; that is to say, if the loss was as great in amount as the payments received. It does not clearly appear from Hruska's testimony that defendant ever regarded the agreement as having been either breached or abandoned by Stephenson or his assignees. It strikes us that the posture of affairs between the parties was such that Stephenson, or the defendant, might have demanded performance at any time; and that if the defendant allowed the property to pass from its control by sale, so that no title could be conveyed pursuant to the agreement with Stephenson. it would have no right to retain the purchase money as a forfeiture. Some of Hruska's statements give the impression that the property is yet in the defendant's control and can be conveyed if desired. If this is so, the defendant, if blameless, might enforce performance or get a decree cutting off the right of plaintiff and his assignors. These points have not been discussed, nor are we undertaking to decide them. In truth this is not an action to recover the money paid on the ground of an abandonment of the contract by defendant or its inability to perform, but is an action on the contract for refusal to perform. What we say is that we are unable, at present, to perceive any theory on which the defendant, if not itself able to carry out the agreement, has the right to forfeit the purchase money, or to hold more of it against an appropriate action than is sufficient to reimburse defendant for any loss it may have sustained by a breach of the contract by Stephenson.

The judgment is affirmed and the cause remanded. All concur.