Montgomery v. Wise.

---

GEORGE W. MONTGOMERY, Respondent, v. CHARLES WISE et al., Appellants.

Kansas City Court of Appeals, May 31, 1909.

1. ACTION: Money Had and Received. The count of money had and received is a very important one, and in some respects it is a sort of connecting link between law and equity, and by the use of the conventional fiction of an implied promise, this count will lie to recover any money which defendant has received or in any manner obtained possession of, which in equity and good faith and conscience he ought to pay over to plaintiff.

2. ————: Tender of Deed. The rule is universal that in the sale of land where the promise to pay the purchase money and make a deed of mutual and dependent covenants, the vendor in an action to recover the purchase money must either offer to convey or tender a deed.

3. ————: Contract: Breach. If one party repudiates the contract or has placed himself in a position that prevents him from performing it this dispenses with the necessity of proving tender.

4. CONTRACT: Time of Performance. Where there is no time specified in a contract to sell land for furnishing an abstract and closing the transaction by deed or payment of purchase money, such matters must be performed within a reasonable time, considering all of the circumstances.

5. **VENDOR AND PURCHASER: Compliance With Contract.**
After vendors refused to comply with their contract they are
in no position to demand its execution, and it is optional with
the purchaser whether he will waive his right to a forfeiture
or insist on a right to rescission and demand the return of his
money.

Appeal from Jackson Circuit Court.—*Hon. John G.
Park,* Judge.

Affirmed.

*Daniel B. Holmes* and *Henry C. Page* for appellants.

The action is grounded on an alleged express prom-
ise by defendants to return to plaintiff the $1,200 which
he had paid to them, with interest thereon. But if the
petition be regarded as counting on the contract or a
rescission thereof, the same result will follow. Olmstead
v. Smith, 87 Mo. 602; Pursley v. Good, 94 Mo. App. 390;
Easton v. Montgomery (Cal.), 27·Pac. 283; Davis v.
Banda-Ghio R. E. Co., 115 Mo. App. 339; Building Assn.
v. McTague, 31 Atl. 727; Woodward v. Van Hoy, 45
Mo. 301. The policy of our code of procedure is to re-
quire the party to state in his pleadings his real ground
of action or defense; and if he chooses one ground, he
cannot so enlarge it as to recover on another. O'Brien
v. Loomis, 43 Mo. App. 35. The same principle is enun-
ciated in many other cases: Latapie-Vignaux v. Sad-
dlery Co., 193 Mo. 14; Stonebreaker v. Railroad, 110
Mo. App. 504; Galm v. Railroad, 113 Mo. App. 593; Rail-
road v. Kimmel, 58 Mo. 84; Stix v. Mathews, 75 Mo. 99;
Haines v. Trenton, 108 Mo. 130.

*Eastin & Corby* for respondent.

Plaintiff's action is assumpsit for money had and
received. Maxwell on Code Pleading, 247. 1 Words and
Phrases, p. 588, citing Rushton v. Davis, 127 Ala. 279,
28 South. 476; King v. Martin, 67 Ala. 177. "The count

138 App.—12

for money had and received is a very important one, and in some respects, differs from all other common law actions. Green & Meyer on Missouri Practice and Pleading, sec. 256; Mansur v. Botts, 80 Mo. 657; Williams v. Railway, 112 Mo. 491; Moore v. Gaus Mfg. Co., 113 Mo. 107; Redman v. Adams, 165 Mo. 70; Fox v. Pullman Car Co., 16 Mo. App. 127; Crump v. Rebstock, 20 Mo. App. 39; Floerke v. Distilling Co., 20 Mo. App. 77; Suits v. Taylor, 20 Mo. App. 174; Legg v. Gerardi, 22 Mo. App. 159; Suddoth v. Bryan, 30 Mo. App. 37; Brierre v. Sugar Co., 102 Mo. App. 628; Richardson v. Drug Co., 92 Mo. App. 520; Keith v. Ridge, 146 Mo. 90; Banking Co. v. Donovan Com. Co., 195 Mo. 288.

*Stewart Taylor* also for respondent.

The action for money had and received is a quasi-equitable one, and appeals to the conscience of the court wherever the defendant has received money which in equity and good conscience should be restored to the plaintiff. Winningham v. Fancher, 52 Mo. App. 458; Railway v. McLiney, 32 Mo. App. 166; Jacoby v. O'Hearn, 32 Mo. App. 566; Clark v. Bank, 57 Mo. App. 285; Gwin v. Smurr, 101 Mo. 553. Although the promise to pay is implied, it must be pleaded as a fact. Long Bros. v. Armsby, 43 Mo. App. 261. Failure to object to the petition before trial prevents any criticism of it now. When the appellants by their own act disabled themselves from performing their contract, by failure to provide a prepayment clause in the Duncan mortgage, they gave the respondent the right to rescind. Bales v. Roberts, 189 Mo. 49; Nothe v. Noomer, 54 Conn. 326; Morange v. Morris, 34 Barb. 315; Erie v. Vincent, 8 Watts 510; Lyon v. Annable, 4 Conn. 350; Insurance Co. v. Trust Co., 44 L. R. A. 231.

BROADDUS, P. J.—This is a suit for money had and received and grows out of the following contract :

## "WISE AND STERN.

### "SALE CONTRACT.

"This agreement, made and entered into this 23rd day of September, 1904, by and between Wise & Stern of Kansas City, Jackson county, State of Missouri, parties of the first part, and G. W. Montgomery of Buchanan county and State of Missouri, party of the second part:

"Witnesseth, That in consideration of four thousand ($4,000) dollars, to be paid to the parties of the first part by said party of the second part in sums and at times hereinafter set forth, parties of the first part agree to sell and convey or cause to be conveyed by good and sufficient warranty deed, and party of the second part hereby agrees to buy a certain piece, parcel or tract of land situated in Lane county and State of Kansas, more fully described as follows, to-wit: The south one-half and the northeast one-fourth of section six, township seventeen, range thirty, and containing four hundred and eight acres, more or less, according to government survey.

"And in consideration of said premises, the said party of the second part agrees to pay to the parties of the first part the aforesaid sum of four thousand ($4,000) dollars, as follows: Twelve hundred ($1,200) dollars cash in hand paid, receipt whereof is hereby acknowledged; the balance to be secured by mortgages on the above described property, payable one hundred ($100) dollars, or any multiple thereof at any interest paying date, and all to become due in five years, with interest at six per cent. The parties of the first part to furnish a good tenant on the above described property for the season of 1905, and the party of the second part agrees to pay for plowing now done at $1.25 per acre, and wheat now planted at same rate.

"The said parties of the first part shall furnish to the party of the second part, abstracts showing in them or from whom the deed is to come, a good and merchant-

able title, and the party of the second part shall have ten days in which to examine said abstracts, and shall return the same to the parties of the first part, together with his objections set out in writing, and the said parties of the first part, shall have a reasonable length of time thereafter in which to correct any defects or objections raised to the said title, the nature and kind of said objections to be taken into consideration in the length of time to be given to the parties of the first part in correcting and remedying the same.

"It is further agreed that should the title of said premises not be merchantable at the time herein set for the closing of this contract, then the parties of the first part shall have sufficient time thereafter to correct all such defects, either by suit to quiet title or otherwise, but in no event shall the closing of this contract be delayed beyond the date herein set forth, on account of any defects of title, providing the first parties shall at the same time and place execute to the second parties a bond in the penal sum of said purchase price to indemnify the second parties against all damages, should the first parties fail to make the title merchantable, as aforesaid.

"However, if a merchantable title to said land cannot be secured, then the party of the first part are to return all money paid by the said second part, and this contract shall become null and void.

"All payments are to be made at the office of Wise & Stern, or at any bank they may designate.

"It is further agreed that time shall be the essence of this agreement, and if the party of the second part shall fail to make the payments of the several sums of money, or any or either of them, or any part thereof, or default shall be made in any way of the covenants herein to be by said party of the second part, kept or performed, then at the election of the parties of the first part this agreement shall be declared null and void, and all sums paid by the party of the second part shall be forfeited to said parties of the first part.

"This contract is made subject to the approval of the owner.

"In witness whereof, we, the undersigned, hereby bind ourselves, our heirs and executors to the fulfillment of this contract. Witness our signatures in duplicate the day and year first above written.

                    "WISE & STERN, by      (Seal)
                    "A. D. ATKINS,          (Seal)
                    "G. W. MONTGOMERY,   (Seal.)".

The plaintiff paid to the defendants the sum of $1,200 as stated in the agreement at the time of its execution. Nothing was done in the matter until October 30th, when plaintiff wrote a letter to defendants making inquiry why the abstract to the land had not been sent to him. On the 1st day of November, defendants wrote to plaintiff asking when and where one of their representatives could meet him for the purpose of submitting to him and his attorney the abstract in question. This letter was answered on November 3rd by Vinton Pike, who had been retained by plaintiff to examine the abstract, with the request that if defendant would send it to him he would examine it immediately and report to them and also to the plaintiff. On the 4th of November, the defendants mailed the abstract to Mr. Pike with a letter in which they asked, if the title was satisfactory, to notify them and they would send mortgages and notes to be executed by plaintiff and wife, and the letter contained the following: "The $1,650 mortgage has been placed on the land since Mr. Montgomery purchased same, and he will only be required to give us a mortgage for the amount due according to the contract." On the 9th of November, Mr. Pike wrote plaintiff that he had examined the abstract and found that it showed a good title to C. F. Duncan subject to a mortgage of $1,650, and that he would so advise plaintiff; and also stating that, "There will be a discrepancy between the terms of his contract and your proposed execution of it, in that the contract provides that he may pay off the mortgage debt

Montgomery v. Wise.

in installments before due.     This provision it seems would not apply to the mortgage made by Mr. Duncan." On the next day, the defendants wrote Mr. Pike a letter in which they refer to the Duncan mortgage and the discrepancy between it and the contract, and stating that "we will have no trouble in getting Mr. Masemore (the mortgagee) to give Mr. Montgomery a statement wherein he will agree to take $100, or any multiple thereof, at any interest paying day. Please advise us at your earliest convenience if this will be satisfactory."     At the same time they enclosed a note and mortgage to be executed by plaintiff and wife.     On the next day, Mr. Pike wrote defendants that plaintiff did not like the arrangement proposed in their letter the day before and asked them to yield to him in that particular, and suggesting that no doubt they would do so as they had control of the Masemore mortgage or could get control of it, at the same time expressing the hope that they would be able to carry out the agreement to the letter of the contract as it is understood by Mr. Montgomery.     On the second day thereafter, Messrs. Holmes & Page, defendants' attorneys, wrote Mr. Pike the following letter:     "Since the conversation of our Mr. Page with you over the telephone to-day, he has seen our client, Wise & Stern, and they are adverse to changing the form of the notes and mortgages as they now exist.     They cannot see that the present form in which the papers are drawn makes any substantial difference to Mr. Montgomery, and it will be some expense and considerable trouble for them to make the change.     At any event, they are unwilling to have their note secured by the mortgage that secures Mr. Masemore's paper.     They seem to think that you can convince your client that the present papers make no substantial difference and are therefore unwilling to go to the useless expense of releasing the old mortgage and procuring a new mortgage to Mr. Masemore.     The only change we think they would agree to in case Mr. Montgomery is still insisting in his desire, is that they would

have Mr. Masemore release the, mortgage given by Miss
Duncan to him and accept in lieu thereof a mortgage and
note for a similar amount from Mr. Montgomery, but
they are particular to have their deed and mortgage sep-
arate from any obligation to Mr. Masemore, and in this
we think they are correct."

On the 16th of November, Mr. Pike acknowledged re-
ceipt of this letter and stated that he had forwarded it to
plaintiff with request to him to come and see him.

On the 17th of November, the plaintiff wrote defend-
ants the following letter: "I am in receipt of a letter
from your attorney to Mr. Pike of St. Joseph, stating that
you had refused to comply with your contract in regard
to that Kansas land. Now, Mr. Stern, what is the use of
making a contract if you don't intend to abide by it?
Now, I am ready to comply to my part of the contract
and have been waiting on you for thirty days or more
and the contract is what I intend to go by. You say it
don't make any difference in the matter. It does make
a difference with me. I have talked with other attorneys
in St. Joe and showed your contract to them and they as
well as Mr. Pike advise me to stay with the contract.
Now, if it is putting you to too much expense and trou-
ble for to comply with the contract, I am not froze to
the deal and, if you would rather pay my money back
and something for damages and cost and expense, I will
meet you half-way, otherwise I will have to hold you to
the contract. That man Mr. Masemore's name is noth-
ing in our contract and he is a stranger to me and
therefore I will not have any dealings with anybody but
Wise & Stern as our contract calls for. I will be in Mr.
Pike's office Saturday next at about 11 o'clock and if
you want to comply with my proposition you can phone
up to Mr. Pike and let me know."

November 19th, Mr. Pike wrote to Holmes & Page
that he could not see that it would make any material
difference with him if the contract were carried out as
defendants proposed, and said, "But I should like to see

the Masemore note and mortgage . . . as he will take the property subject to the mortgage and virtually assume payment. The title by abstract appears to be in C. F. Duncan, but the owner is referred to in the correspondence as Miss Duncan. I should like to know also who she is.

"I confess I do not like the aspect of the transaction. The initials are used only in naming the grantee in the deed to her and there is nothing to indicate the sex of the party. It would not have cost much to write the Christian name of the grantee by signs or letters. I shall rely upon your assurance that the parties are all right and that the situation does not require any further inquiry by the purchaser. . . . As soon as I hear from you, and have the information desired, the matter can be closed in the speediest way practicable."

On November 21st, Dan'l B. Holmes wrote Mr. Pike that he had sent for a copy of the mortgage and note from Miss Duncan to Masemore and would forward them to him as soon as they arrived, and assuring him that he knew Miss Duncan personally; that she was a single woman and that he knew the transaction to be all right in every particular. On November 25th, he forwarded to Mr. Pike a certified copy of the mortgage.

On November 25th, Mr. Pike acknowledged receipt of the mortgage. He states two objections to the mortgage: "1. The contract provides that Mr. Montgomery shall have the privilege of paying the balance of the purchase price before due in $100 payments, or any multiple of $100, on any interest paying day. The Duncan note to Masemore, as described in this mortgage, runs for five years without this privilege.

"2. The contract calls for three quarter-sections, 480 acres more or less, according to government survey. In the Duncan mortgage, the three quarters are said to contain 459.48 acres, more than 20 acres less than 480 and a greater variance than the term 'more or less' will permit. The terms of the trade indicate that the parties

contemplated 480 acres, for the price was to be $8.33 1-3 per acre, and this price multiplied by 480 produces $4,000. . . . Mr. Montgomery has been made very desirous of annulling the transaction. I would not hint for reasons to encourage him in his desire, but if you are satisfied that the contract cannot be substantially carried out, I hope you will advise its rescission."

On December 7th, Mr. Pike returned defendants' abstract of title, unexecuted note and mortgage, and copy of note made by Duncan to Masemore, with the statement that he had advised plaintiff to go to Kansas City and engage an attorney who would be nearer to their office, and that he would do so shortly, asking them to advise Messrs. Holmes & Page that he no longer represented Mr. Montgomery.

The plaintiff afterwards employed Messrs. Beardsley, Gregory & Kirschner, who on January 18, 1905, notified defendants that by the authority of plaintiff the contract was rescinded and demanded a return of the $1,200 paid defendants under the terms of the contract.

On January 19th, defendants notified Messrs. Beardsley, Gregory & Kirschner that on January 16th they had made a tender in writing to plaintiff. The said tender in writing reads as follows:

"Mr. G. H. Montgomery:

"We herewith again hand you the abstract to S. 1-2 and the N. W. 1-4, Sec. 6, Tp. 17, R. 30, in Lane county, Kansas. The abstract shows that the mortgage for $1,650 from C. F. Duncan to Sprague V. Masemore has now been duly released and that the title now stands in C. F. Duncan free and clear of all incumbrances of every kind and character. Your contract with us calls for 480 acres, more or less. The abstract shows the number of acres to be 459 48-100, which we regard as complying with the contract. Nevertheless, for the purpose of this tender, we deduct from the gross the full 480 acres. We now tender to you warranty deed . . . from said C. F. Duncan conveying the title to you free and clear

of all incumbrances and demand that you execute and deliver to us in accordance with the provisions of the contract a note and first mortgage on said land for $1,650, and a note and second mortgage on said land for the balance of $979."

The plaintiff began his action on the 22nd day of September, 1905, to recover the said sum of $1,200. The petition, after reciting the contract, sets up that defendants furnished an abstract to the land, which, when examined, showed that there were but 459.48 acres of the land; that it was incumbered by a mortgage for $1,650, payable to one Masemore, dated October 1, 1905, due five years after date, which had been placed upon the land subsequent to the execution of the contract; that plaintiff notified defendants of said defects within due time, as provided by the contract, and that they failed and refused to convey or cause to be conveyed to plaintiff said land as provided. It is then alleged that defendants promised to return to plaintiff said sum of $1,200, for which he asks judgment.

The defendants' answer consists of a general denial and a recitation of the terms of the contract and performance on their part, including the written tender of January 16, 1905. The plaintiff recovered judgment and defendant appealed.

The court gave two instructions at the instance of plaintiff. That No. 1 is as follows:

"The contract entered into between the plaintiff and the defendants in this case created mutual obligations and bound the defendants, within a reasonable time after the execution of the contract, to comply with its terms by tendering to the plaintiff a merchantable title to the land described in the contract, and a warranty deed conveying the same to the plaintiff and to accept from him a note or notes for the unpaid purchase money, due in five years and payable in installments of $100, or any multiple thereof, at any interest payment period, secured by a mortgage or mortgages on the premises; and

said contract bound the plaintiff to accept such warranty deed, if tendered within a reasonable time, and to sign the notes and execute the mortgage or mortgages on the land, and deliver them to the defendants; and, if the jury believe from the evidence, that the defendants failed, within a reasonable time after the execution of the contract, to procure the title to said premises and to tender a warranty deed conveying a title free from incumbrances, to plaintiff, in order that he might give back a purchase-money mortgage or mortgages for the balance, then your verdict will be for the plaintiff, for $1,200, and you may add interest at 6 per cent. per annum since demand, if any, by plaintiff upon defendants for the payment of said sum."

Instruction No. 2, given at the instance of plaintiff, contains a definition of reasonable time as mentioned in instruction No. 1.

We pass over the first objection of defendants as to the form of the action by a quotation from Green & Meyer on Missouri Practice and Pleading, Sec. 256, to-wit, "The count for money had and received is a very important one and in some respects differs from all other common law actions. It is a sort of connecting link between law and equity, and by the use of the very convenient fiction of an implied promise this count will lie to recover any money which defendant has received, or in any manner obtained possession of, which in equity and good faith and conscience he ought to pay over to plaintiff." See also Mansur v. Botts, 80 Mo. 657; Redman v. Adams, 165 Mo. 60; Clifford Banking Co. v. Donovan, 195 Mo. 262.

If said instruction No. 1 should not have been given as defendants contend, the plaintiff was not entitled to recover and the argument against its correctness is to that effect. The argument is, that, under the contract the payment of the purchase price by plaintiff and the conveyance of the land were to be simultaneous acts, and the respective agreements of the parties therefor consti-

tute mutual and dependent covenants, for a breach of which neither could be put in default without a tender of full performance by the other; and that the rule is the same whether the action be by the vendor or the vendee. It is not contended by plaintiff that there was any performance on his part.

The rule is stated as follows: "The rule is universal that in the sale of land where the promise to pay the purchase money, and make a deed, are mutual and dependent covenants, the vendor, in an action to recover the purchase money, must either offer to convey or tender a deed." [Olmstead v. Smith, 87 Mo. 602; Davis v. Barada-Ghio Real Estate Co., 115 Mo. App. 327; Pursley v. Good, 94 Mo. App. 382.] But it was said in the last case that if one party repudiates the contract or has placed himself in a condition that prevents him from so doing, this dispenses with the necessity of proving tender. And it was so said in Harwood v. Diemer, 41 Mo. App. 48, and further that, "After a party to a contract has repudiated it, he is not entitled to a tender of performance by the other contracting party."

There does not seem to be any real dispute as to the law of the case, but the parties differ widely as to its application.

By the terms of the contract, plaintiff was to pay defendants $1,200 in cash and upon the delivery to him of a good title he was to execute a note and mortgage on the land to secure the balance of the purchase money, the note to be payable in five years, with the privilege of paying $100, or any multiple thereof, at any interest paying date. The defendants were to furnish plaintiff an abstract showing in them or the person from whom deed was to come a good and merchantable title, upon the receipt of which plaintiff was to have ten days in which to examine it and to return it to defendants with his objections in writing, after which defendants were to have a reasonable time to correct any defects found to exist, the nature and kind of which was to be taken into

consideration in the length of time to be allowed for the purpose.

It will be observed that no time was specified in which the abstract should be furnished and the closing of the transaction by deed and payment of the purchase money. It must, as a matter of course, be conceded that time as to these matters not being provided for, they must be performed within a reasonable time, considering the circumstances.

On the 4th of October, the abstract was submitted to Mr. Pike, plaintiff's lawyer. In a few days thereafter, Mr. Pike gave notice by letter to defendants that he had examined the abstract and found that title was in C. F. Duncan subject to the mortgage heretofore mentioned, and that there was a discrepancy between the contract and the mortgage, the latter containing no provision for $100 payments, or any multiple thereof, at interest paying dates. The defendant made no offer to correct the matter, but submitted a proposition to have the mortgagee make a statement that he would receive such payments. Plaintiff declined to accept of this proposition and his attorney so notified defendants. On November 14, defendants, through their attorneys, Holmes & Page, declined to make the correction and suggested what they might be willing to do instead. This suggestion, plaintiff refused to entertain, and on the 17th of November notified defendants as stated in his letter of that date that they should comply with the contract, and fixing a time and date upon which they should inform him what they proposed to do in the matter. The defendants failed to meet plaintiff at the time or place indicated, but made another effort to induce Mr. Pike to deviate from the contract. The latter, after pointing out to Holmes & Page certain objections to the condition of the title, ceased to represent plaintiff on the 7th of December.

It seems to us that the failure and refusal of defendants to comply with the contract after so many re-

peated demands upon the part of plaintiff through his attorney and finally by himself, and the various subterfuges they employed for the purpose of evading its terms, are most convincing that they did not intend to do so as long as they could find a pretext for their action. They were bound within a reasonable time to correct any defects in their title, and it was a question for the jury to say whether under all the circumstances they had complied with the contract in that respect, and, as the instruction submitted that question to the jury, which, we think, was what the court should have done, the defendants are concluded by the verdict.

A very significant fact appears in evidence, viz., that the mortgage of Duncan to Masemore was executed in October, some time after the date of the execution of the contract. If defendants had control of the land, as they assumed they did, why did they permit this incumbrance which would prevent them from showing a clear title to the land? This was enough to arouse suspicion not only in the mind of such a man as plaintiff, who was a farmer, but also in others in other stations in life. This very act, which must be attributed to defendants, was the principal cause of the delay and almost the sole obstacle that prevented a formal consummation of the contract.

And furthermore, when called upon to make a good abstract, they had put it out of their power to do so, if they had no control over the owner in fee of the land and the mortgage. Plaintiff was not bound under the authorities cited to offer to perform under such circumstances, as the offer would have been unavailing. But, if they had such control, why did they not exercise it at once and close the transaction? The evident purpose was to get plaintiff bound for the payment of a note very materially different from the agreed one. All these facts constituted evidence of the strongest character of unreasonable delay. The transaction could easily have been terminated before the execution of the Masemore mortgage. The defendants contend that plaintiff com-

mitted a breach of the contract when he refused to accept tender made by them on the 16th of December, but we think differently, and that the breach was committed when defendants failed and refused to furnish abstract showing clear title in themselves or from Duncan. After defendants had failed and refused on demand to comply with their contract, the plaintiff's cause of action accrued.

It follows from what has been said that the tender of defendants made on the 16th day of January was unavailing for the reason that it was untimely, that is, after an unreasonable delay as found by the jury. After having refused to comply with the contract, they were in no position to demand its execution. It was then at the option of the plaintiff whether he would waive his right to a forfeiture or insist on his right to rescind and demand his money in return. He chose to do the latter, as was his right to do.

Our attention has been called to certain authorities on this question, which it is claimed, provide that where time is not of the essence of the contract a neglect or delay to execute and deliver a conveyance is not generally an impairment of the rights of the parties; and that, when time is not material, it is sufficient if the vendor can make a good title before judgment. In Sea Isle City Lot & Bldg. Ass'n v. McTague (N. J.), 31 Atl. 727, the language of the court is that, "Mere delay by one party in the execution of an executory contract whose terms would be satisfied by a performance within a reasonable time does not of itself entitle the other party to rescind." In Woodward v. VanHoy, 45 Mo. 300, the whole theory of the case is expressed in the headnote as follows: "When one pays the money and takes possession under a title bond for the conveyance of land, and the vendor after neglecting for three years, to execute the deed, makes tender thereof, the vendee cannot reject the deed and sue for the recovery of the purchase money. Time not being of the essence of the contract,

and the vendee being in possession, the delay was not such as to furnish ground for rescission of the contract." The authorities do not sustain the position.

What we have said, we believe, disposes of all the material questions raised on the appeal, including the giving and rejection of instructions. We believe the judgment was for the right party, and it is therefore affirmed.

All concur.