MILLICAN, INC., ET AL., *v.* MR. STEAK, INC., ET AL.

(No. 894,947—Decided August 17, 1973.)

Court of Common Pleas of Cuyahoga County.

*Mr. James T. Millican, II,* for plaintiffs.
*Mr. John D. Kelliher, Mr. J. Ross Haffey, Jr.,* and
*Mr. Burt J. Fulton,* for defendants.

McMONAGLE, J. This is an action in which the plaintiffs ask for both equitable and legal relief from the court. There is no substantial dispute about most of the facts. Mr. Steak, Inc., is a corporation which sells franchises for the operation of a unique type of restaurant under the name of Mr. Steak, and it also owns and operates a large number of such restaurants throughout the United States.

In December of 1968, the defendant, Mr. Steak, was desirous of selling franchises for the establishment of Mr. Steak restaurants in and about Cleveland, Ohio. It placed advertisements in the daily newspapers for the purpose of procuring purchasers and also employed a Mr. Palma as its representative to consummate sales thereof.

In response to one of the ads, Mr. James T. Millican, Jr., president of the plaintiff, James T. Millican, Inc., attended a meeting called by Mr. Steak of prospective purchasers. He met Mr. Palma at this meeting and evidenced to Mr. Palma an interest in the Mr. Steak franchise pro-

posal. The Mr. Steak representative advised Mr. Millican that arrangements had been made so that seven (7) franchises at $15,000.00 each would be issued for locations in and about Cuyahoga County, Ohio; that the defendant, Mr. Skoda, who had previously participated in the establishment of Mr. Steak restaurants, was assembling some investors for the purpose of investing in such franchises, and the Mr. Steak representative suggested that if Mr. Millican was interested in such franchises, they could participate with Mr. Skoda's group. Plaintiffs Ernest R. Vargo and Louis E. Vargo are business associates of Mr. Millican and each plaintiff put up $4,900.00 for the purpose of investing in the said seven (7) Mr. Steak franchises.

Mr. Skoda collected a total of $105,000.00 from various investors, including the $14,700.00 from the plaintiffs, and turned over the said $105,000 to Mr. Steak. Papers evidencing the offers and proposals of the investors were made to Mr. Steak in the name of Tary, Inc.

It is conclusive from the evidence, and the court finds, that Mr. Steak knew, through its representative, that the $105,000.00 that was paid over to it consisted of funds advanced by various investors with the understanding that they would ultimately become shareholders in a separate corporation to be created for the ownership and operation of Mr. Steak restaurants upon the establishment of such restaurants in accordance with paragraph 2, services, contained in the franchise form prepared by Mr. Steak and upon which form the original proposals in the name of Tary, Inc., were made to Mr. Steak.

It is also conclusive from the evidence that the franchises in which the said investments were intended to be made included the following provision:

"(2) *Services.*

"In consideration of the service fees hereinafter outlined, Mr. Steak hereby agrees to perform the following services and functions and to assume the following obligations;

"Mr. Steak shall obtain for the associate a location for the construction and establishment of its Mr. Steak Restau-

rant within the area so outlined in the paragraph entitled 'Territory.' Such location shall be secured by Mr. Steak signing as prime tenant on a lease with the land owner of such location.

"It is hereby agreed that in the event Mr. Steak fails to execute a lease for the activation of the Mr. Steak Restaurant within the area herein designated within one year from the date of this franchise agreement, the associate shall be given the option to terminate this agreement and have his money refunded plus 6% interest."

When an appreciable period of time after the year specified in the foregoing provision had elapsed, Mr. Steak did offer one franchise to the investor group; this was after the filing of this lawsuit and demand was made for return of the money. The money turned over to Mr. Steak, Inc., belongs to the plaintiffs herein and the other investors. Mr. Steak, Inc., was obliged under the terms of the deposit with it of the $105,000.00 to either perform in accordance with the above cited provision or return the funds together with six percent (6%) per annum. If it is to be considered that the proposal of the investor group had been accepted by Mr. Steak so that a binding contract came into existence, said contract was breached and the investors are entitled to the return of their money with interest.

If no contract actually came into being, then the defendant Mr. Steak has been merely holding the money of the investors and it should be returned to them.

Mr. Steak has kept the money of the plaintiffs and the other investors for almost five (5) years without proffering a completed franchise or even formally accepting what might be considered as the offer of the investors. Considering the evidence offered by Mr. Steak as to its meager efforts to obtain and lease, within the specified time, any location for the establishment of a Mr. Steak Restaurant, it is questionable as to whether it took the investors' money in good faith to be used for the purpose for which it was intended by them.

Tary, Inc., has been categorized herein as a *de facto*

corporation, a limited partnership, a conduit, a vehicle, and a checking account.

In the printed instruments, prepared and used by Mr. Steak, it refers to one seeking to become a franchise holder and a franchisee as an "associate."

Webster's New International Dictionary (2 Ed.) defines an "associate" as "one having an interest in common with another, as a partner, a confederate, a colleague in office, etc." Synonyms are companion, crony, pal, comrade. The court does not deem it necessary to identify Tary, Inc., with some normally identifiable legal classification in order to render a decision herein that is firmly founded in law and equity. Counsel herein has presented exhaustive arguments with reference to relief permissible under the pleadings herein. Citations and arguments deal with actions governed by the former procedural statutes. None are concerned with actions presented under the Ohio Civil Rules. Under the Civil Rules the issues of the case are made up not only on the pleadings but on the pleadings and the evidence. While the prayer of the complaint does not limit the relief that may be granted, it is usually illustrative of the type of claim that is the subject matter of the action.

Civil Rule 8(A) provides:

"Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he determines himself entitled. * * *"

Civil Rule 8(F) provides:

"Construction of Pleadings. All pleadings shall be so constructed as to do substantial justice."

The Ohio Civil Rules pertaining to the pleadings and particularly the complaint are patterned after the Federal Rules.

See McCormac, Ohio Civil Rules Practice, at page 92:

"The United States Supreme Court, in discussing what is necessary to show a claim upon which relief could be granted, said: 'In appraising the sufficiency of the com-

plaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.' " (*Conley* v. *Gibson* [1957], 355 U. S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99.)   (Emphasis added.)

McCormac, *supra*, at page 94:

"Any legal theory applicable to the short and plain statement of the incident upon which relief is based will support a recovery. This is contrasted with the factual statement of all elements of a cause of action which was formerly required."

However, if a direct declaration of any principle of law is needed to warrant recovery by the plaintiffs, we need look no further than the basis for recovery in an action for money had and received.

In *Propst* v. *Sheppard* (Mo. App. 1943), 174 S. W. 2d 359, the court states that an action for money had and received, although an action at law, is governed by equitable principles so that no one ought to unjustly enrich himself at the expense of another.

Ballentine's Law Dictionary (2 Ed.), states, at page 829:

"It [such action] is not dependent, however, upon an express promise, or even upon one implied in fact, but lies in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and ex aequo et bono it belongs to another. This is so whether the money was received from the plaintiff or from a third person. See 4 Am. Jur. 508 *et seq.*"

In *Stone* v. *White* (1937), 301 U. S. 532, the court indicates that a cause of action for money had and received has been greatly expanded as a medium for recovery for every form of quasi contractual obligation in which the duty to pay money is imposed by law independently of contract express or implied in fact.

*Webster* v. *Sterling Finance Co.* (1943), 351 Mo. 754, 173 S. W. 2d 928, 929, states, in headnotes 5 and 6, that:

"The action for 'money had and received' is favored in law, and the tendency is to widen its scope, and the action lies where defendant has received or obtained money of paintiff which in equity and good conscience he ought to pay over to the plaintiff.

"In actions for 'money had and received,' an express promise to pay need not be alleged, nor is privity of contract required, since the law implies privity."

*Montgomery* v. *Wise* (1909), 133 Mo. App. 176, 187, 120 S. W. 100, 103, states:

" 'The count for money had and received is a very important one, and in some respects differs from all other common law actions. It is a sort of connecting link between law and equity, and by the use of the very convenient fiction of an implied promise this count will lie to recover any money which defendant has received, or in any manner obtained possession of, which in equity and good faith and conscience he ought to pay over to plaintiff.' "

In *K. B. Co.* v. *Dixon* (1911), 32 C. D. 426, 19 C. C. (N. S.) 196, the court held a petition alleging that plaintiff had purchased an overcoat from defendant and paid down $4 of the purchase price, that defendant refused to deliver the overcoat and that plaintiff asked judgment for his $4 was an action for money had and received.

*Hartford Acc. & Indem. Co.* v. *Benevento* (1945), 133 N. J. Law 315, 319, 44 A. 2d 97, 99-100, states:

"The action on the case for 'money had and received' is comprehensive in its scope, equitable in spirit, although legal in form, and is maintainable when defendant has received money which in equtiy and good conscience belongs to plaintiff. * * * The action has been extended '* * * to almost every case where an obligation arises from natural reasons and the just construction of law, that is, *quasi ex-contractu.*' "

The fact that all of the investors are not parties in this lawsuit is no reason why the plaintiffs are not entitled to a recovery. Each of the investors and the amount of their investments which total the $105,000.00 has been specified herein. The payment to the plaintiffs of the amount of the

judgment of this court herein will constitute a satisfaction and an extinguishment, in such amounts, of any claims made by or through the defendant Tary, Inc., so that the defendant Mr. Steak shall not be obliged to so respond for any amounts in excess of the $105,000.00 plus interest.

The court further finds as to the claim of the plaintiffs against the defendant Mr. Skoda that said defendant did not do other than that which the plaintiffs and the other investors expected him to do. He collected the funds and turned them over to Mr. Steak in accordance with the agreement of the investors. The court therefore finds that the plaintiffs herein are each entitled to a judgment against Mr. Steak for the sum of $4,900.00 plus interest thereon at six percent (6%) per annum from January 29, 1969—when $80,000.00 of the $105,000 was paid to Mr. Steak—and costs of this action; that the action be dismissed as to the defendant Joseph F. Skoda.

A judgment entry in accordance with this memorandum has been signed and filed this day.