[No. 509.   Decided October 25, 1892.]

I. N. MUDGETT, *Respondent*, v. W. S. CLAY AND ANNA
CLAY, *Appellants*.

STATUTE OF FRAUDS — PART PERFORMANCE — SPECIFIC PERFORM-
ANCE — UNCERTAINTY OF CONTRACT — LACHES.

Where, under a parol agreement to convey certain lots, they
were taken possession of, cleared and fenced, such possession and
improvement constitute a sufficient part performance of the con-
tract to take it out of the operation of the statute of frauds.

Specific performance of a parol agreement for the conveyance
of land will not be refused because of a conflict of testimony con-
cerning the exact terms of the contract, if, from the whole evidence
in the case, the contract can be determined with reasonable cer-
tainty.

*Laches* is not a defense to an action for specific performance
where the evidence shows that payment of the purchase price of
certain lots and the delivery of a deed therefor were to be concur-

rent acts, as in such case neither party can put the other in default until he himself has offered to perform.

Where a party seeking specific performance of a contract to convey is in possession of the premises under an assertion of right, mere lapse of time is not prejudicial to his rights.

*Appeal from Superior Court, Snohomish County.*

*Craddock & Miller,* and *Stratton, Lewis & Gilman,* for appellants:

Where there is a conflict as to the terms and conditions of a parol contract to convey real estate, or if any of its terms are left in doubt and uncertainty, a court of equity will not exercise its extraordinary jurisdiction to enforce it. *Purcell v. Miner,* 4 Wall. 513; *Magee v. McManus,* 12 Pac. Rep. 451; *Odell v. Morin,* 5 Or. 96; *Brown v. Lord,* 7 Or. 302; *Bowen v. Warner,* 1 Pin. 600; *Blanchard v. McDougall,* 6 Wis. 165; *May v. Cavender,* 7 S. E. Rep. 489; *Wilson v. Wilson,* 6 Mich. 9; *Brown v. Brown,* 47 Mich. 378; *Wright v. Wright,* 31 Mich. 380.

Equity will refuse to interfere where there has been a long and unexplained delay, as in this case, where over four years had elapsed before respondent took any steps to enforce the contract. *Benedict v. Lynch,* 1 Johns. Ch. 378; *Brashier v. Gratz,* 6 Wheat. 528; *Taylor v. Longworth,* 14 Pet. 172; *King v. Hamilton,* 4 Pet. 311; *Green v. Covillaud,* 10 Cal. 317; *Weber v. Marshall,* 19 Cal. 448; *Requa v. Snow,* 76 Cal. 590; *Campbell v. Hicks,* 19 Ohio St. 433; *Boston & Maine R. R. v. Bartlett,* 10 Gray, 384; *Merritt v. Brown,* 21 N. J. Eq. 401; *Johns v. Norris,* 22 N. J. Eq. 102; *O'Donnell v. Jackson,* 69 Cal. 622; *Haughwout v. Murphy,* 21 N. J. Eq. 118; *Brown v. Haines,* 12 Ohio, 1; *Henderson v. Hicks,* 58 Cal. 372.

*Frater & Coleman,* for respondent:

It is apparent from the entire record in this case that both parties to the action acquiesced in the lapse of time

now complained of by appellants.    Under such circumstances lapse of time will not defeat specific performance. *Welch v. Whelpley*, 28 N. W. Rep. 744; *Quinn v. Quinn*, 41 N. W. Rep. 316; *Walters v. Travis*, 9 Johns. 451.

A parol contract for the sale of land, which contract is partly performed by a transfer of possession of the land to the purchaser and the erection of valuable improvements thereon by him, is taken out of the prohibition of the statute of frauds. *Irwin v. Dyke*, 1 N. E. Rep. 913; *Harrison v. Polar Star Lodge*, 5 N. E. Rep. 543; *Hanlon v. Wilson*, 4 N. W. Rep. 1031; *Dickman v. Birkhauser*, 21 N. W. Rep. 396; *Haines v. Spanogle*, 24 N. W. Rep. 211; *Martin v. Patterson*, 2 S. E. Rep. 859; *Slingerland v. Slingerland*, 39 N. W. Rep. 146; *Burns v. Fox*, 14 N. E. Rep. 541.

The opinion of the court was delivered by

ANDERS, C. J.—The respondent instituted this action against the appellants to enforce the specific performance of a parol agreement to convey two lots in the city of Snohomish, described in the complaint.    An issue is raised by the pleadings as to what the contract was between the parties.    There is a conflict as to the time when the agreement was made, and also as to certain of its terms and conditions, but it is not controverted that a contract was entered into to convey the land.    And it is fairly established by the evidence that the respondent, in pursuance of a contract to convey to him the premises in question, entered upon and took possession of the lots, cleared and fenced the same, and has ever since been in possession thereof, with the knowledge of the defendants, and without any objection on their part.    Such possession and improvement of the land we think constitute a sufficient part performance to take the case out of the operation of the statute of frauds.

The first objection made by the appellants is, that the contract alleged by the respondent was not established by. the evidence with sufficient certainty to warrant the court in decreeing a specific performance, and it, therefore, becomes necessary to examine the testimony upon which the court below based its decision. Both parties agree upon the price that was to be paid for the lots, the rate of interest, and that no time was fixed for the payment of the purchase price. They also agree that there was but one contract entered into between them in reference to the sale and purchase of these lots. The testimony of the respondent was to the effect that the contract, although the subject had been previously mentioned at his own house, was finally consummated at the residence of appellants, in the presence of Mrs. Clay and one Bell, an attorney, at a time when the latter drew up a deed for a lot purchased by the respondent from Mr. Clay, and that the agreement was that he was to pay Mr. Clay eighty dollars apiece, or one hundred and sixty dollars for the two lots, and interest thereon at the rate of one per cent. per month, and that nothing whatever was said about building a house or paying the taxes; that no time was mentioned at which payment was to be made, but Mr. Clay remarked that he had no need of the money, and that he, Mudgett, could have the use of it. He further stated that he paid sixty dollars for the lot for which the deed was made at the time mentioned, but when he asked, "How about those other two lots?" he, that is, Mr. Clay, said "I could have them for $80 apiece; that they could not sell them so cheap; they would have to charge me $80 apiece," and that Mrs. Clay said she and Mr. Clay "never went back on their word, when I got ready I could have them." The testimony of Bell as to what the conversation was between the parties at the time alluded to, substantially corroborates that of

the respondent.    He testified that when they got through
with the transaction concerning the other property —

"Mr. Mudgett says 'how about the other two lots?'
That was the two lots back of them, and Mr. Clay says,
you can't have these as cheap as those, and he mentioned
the price, I think the price was $80.    I think that was the
price agreed upon at the time.    He said he would have to
ask him $80, and Mr. Mudgett asked him if he should
draw up some papers to that effect, and he said it was not
necessary, that his word was good for that amount.    Mr.
Mudgett said he had taken his word before and it was all
right, and Mr. Clay had kept his word all right, and that
he was willing to trust him.    And Mrs. Clay said you will
find you can always take our word, and he said if I get
those lots I will clear them and put them into garden.
Mr. Clay said all right, and said he could have them for
$80 a lot and interest on the money.    I don't remember
the rate of interest, whether it was one per cent. or ten,
and any way Mr. Mudgett was to go ahead and clear up
the lots."

The witness further testified that Mrs. Clay said "You
need not be afraid to take our word."    And also that
nothing was said at that time about building a house.    The
date of that conversation, as shown by reference to the
deed then executed, was November 19, 1886.    On the other
hand, both of the appellants testified that no such conversa-
tion occurred and no such contract, nor any other contract,
concerning the lots in controversy was made at that time,
nor at any other time in the presence of Mrs. Clay.    Mr.
Clay testified substantially that the bargain was made at
the residence of the respondent in presence of his wife, and
probably a child or two; that Mrs. Clay was not present,
and that the respondent agreed, in consideration of the
sale, that he would build a dwelling house upon the lots,
but within no specified time, and to pay the taxes and the
interest annually.    He also testified that the agreement
was entered into in February, 1888, which he knew was

the time because he made a memorandum of the fact in a book about a month afterwards, and from which he refreshed his memory.     It may be observed, in passing, that the defendants do not allege in their answer the payment of taxes as being a part of the contract with the plaintiff. The foregoing is substantially all of the testimony bearing directly upon the terms of the contract between these parties, although the defendants introduced some testimony to the effect that in a casual conversation the plaintiff stated to a witness that the agreement for the lots was made at plaintiff's house, and to another witness that he wished that Mr. Clay had sold these lots to him as he might then have gotten pay for clearing them.

It is shown by the testimony that on or about March 26, 1891, and two days before the complaint in this action was filed, the respondent offered to pay Mr. Clay the said sum of one hundred and sixty dollars and interest thereon at the rate of one per cent. per month from about the time the latter claimed the contract was made, but he refused to receive the money, or to recognize any right whatever of the respondent in or to the premises, and declined to talk about the matter further than to remark that respondent had no right or title to the land, and that he did not want anything to do with him, or words to that effect.     No payments were ever made by the respondent, nor is it shown by the record that appellants ever called upon him to pay, or ever tendered a deed to him or offered to execute one for him. Upon this evidence the court found the contract to be as alleged by the plaintiff and rendered a decree accordingly.

As we have already stated, it is claimed by the appellants that the proof does not justify the conclusion reached by the court.     It is insisted that the terms of the contract are left in doubt by the evidence, and that, in such cases, a court of equity will not grant the remedy of specific performance.     Courts of equity take cognizance of cases for

specific performance of verbal agreements to convey real estate, by virtue of their general jurisdiction to relieve against frauds. They exercise their jurisdiction in such cases in order to prevent a party from escaping from the obligation of his agreement, on the plea of the statute of frauds, after the other party to the contract has, in good faith, proceeded so far in the execution of the agreement, that it would be a fraud upon him to give effect to the statute. But the court cannot ascertain whether or not a party would be defrauded by not decreeing specific performance until the contract sought to be enforced has been clearly and satisfactorily established. A mere conflict of testimony, however, is not, of itself, a sufficient ground for refusing relief. It is sufficient if, from the whole evidence in the case, the contract can be determined with reasonable certainty. It is the duty of the court to ascertain, if it can, what the terms of the contract really are, although the evidence may be somewhat conflicting. Pomeroy on Contracts, § 137.

Now in this case the defendants allege in their answer that the plaintiff not only agreed to pay the purchase price and interest as alleged in the complaint, but also promised to build a "good and suitable dwelling house" upon the premises immediately after the date at which the contract was made. Upon this point the testimony of the respective parties is directly in conflict. The court, probably influenced by the testimony of Bell, a disinterested witness, found that the contract between the parties was that set forth in the complaint, and we are not prepared to say, in view of the whole evidence, that the court should have found otherwise. To the claim of counsel for the appellants that the respondent was to pay the interest annually, and to pay the taxes upon the lots, it is a sufficient answer to say that the contract set up by the defendants in their pleadings is wholly silent as to both of these matters. In

other words, the proof, in these particulars, does not correspond with the allegations of the answer as to what the contract was.

It is next insisted that the respondent has slept too long upon his rights, if he ever had any, to be entitled to the aid of the court. It is said to be the settled rule that a court of equity will not compel the specific performance of a contract in favor of one who has not been diligent in performing his own part of the contract. But what lapse of time is necessary to render a demand "stale" depends largely upon the facts and circumstances of each particular case. If an unreasonable time has elapsed without a sufficient excuse being shown, a court of equity will not interfere to enforce a specific performance. But it is also a settled rule that a defendant who desires to rely upon the plaintiff's delay as a ground for defeating the action must have been willing, prompt and diligent in performing his part of the agreement. As above stated, there is no testimony in this case that the appellants ever called upon the respondent to pay any part of the purchase price, or ever offered or tendered him a deed to the premises. It would appear from the evidence that payment of the purchase price and the delivery of the deed were to be concurrent acts; and in such cases neither party can put the other in default until he himself has offered to perform. Neither party can complain of the other doing nothing so long as he himself has done nothing. *Leaird v. Smith*, 44 N. Y. 618; *Crabtree v. Levings*, 53 Ill. 526; Fry on Specific Performance, § 1080.

Another reason why the delay in this case should not bar the right of the respondent to have the contract specifically executed is, that the respondent was in possession of the premises in dispute under an assertion of right. Under such circumstances the rule in courts of equity is

that the mere lapse of time is not prejudicial to the rights
of the plaintiff.    Pomeroy on Contracts, § 404.

It is alleged in the answer that the contract was mutu-
ally rescinded long prior to the commencement of this ac-
tion, but there is no proof of any such fact.    The most
that can be said is, that it is a disputed question whether
Mr. Clay told the respondent some six months before the
action was brought that he had forfeited the contract.
But if that is true it does not prove a rescission of the con-
tract as alleged.    If the appellants intended to put an end
to the contract they should have notified the respondent to
pay the purchase price within a reasonable time, or the con-
tract would be forfeited.    Upon such notice, respondents
themselves not being in default, the agreement might have
been forfeited.    But no mere arbitrary notice could have
that effect. 2 Warvelle on Vendors, 823, 824.

It is further contended by appellants that the real estate
involved in this controversy is community property, and
that the agreement was made by the husband without the
knowledge or consent of the wife, and is therefore abso-
lutely void.    It is alleged in the answer that the land was
the community property of the defendants, but we see
nothing in the evidence showing either when or how it was
acquired.    But if there were such evidence it would be of
no avail in favor of appellants.    Aside from the testimony
on behalf of the respondent that Mrs. Clay was present at
the time the agreement was made, and assented to it, she
herself testifies that she knew that the respondent had
claimed to own the lots for nearly four years, but never
objected or said anything against it because she was not
asked to do so.    Under the circumstances she cannot be
heard to interpose the objection now.    But we need not
base our conclusion on the ground of her mere knowledge
that the respondent claimed the property as his own with-
out objection on her part, as it seems from the testimony

that she was a party to the contract, and should therefore be bound by it.

Appellants also claim that the cause of action is barred by the statute of limitations. But the objection was not raised in the court below, and therefore cannot be entertained here. There are some other points made in the brief of the learned counsel for the appellants which we need not notice further than to state that, in our opinion, they are untenable.

The judgment of the court below is affirmed.

STILES, HOYT, DUNBAR and SCOTT, JJ., concur.