[No. 9589. Department One. December 26, 1911.]

ALMA D. KATZ, *Respondent*, v. O. B. HATHAWAY *et al.,* *Appellants.*[1]

VENDOR AND PURCHASER—CONTRACT—FORFEITURE—RESCISSION BY VENDOR—TENDER OF DEED. Where a contract for the sale of land contained no forfeiture clause, and all the installments except the last one were paid, the agreements to make the last payment and to deliver a conveyance are mutual and concurrent, and the vendor cannot rescind and claim a forfeiture where he did not tender a deed, and was not in a position to convey a good title until after the vendee had tendered the purchase price.

Appeal from a judgment of the superior court for Clarke county, Mitchell, J., entered December 22, 1910, upon findings in favor of the plaintiff, in an action on contract, after a trial before the court without a jury. Affirmed.

*A. E. Clark* and *Miller, Crass & Wilkinson,* for appellants.

*L. H. Tarpley, Thos. O'Day,* and *R. H. Back,* for respondent.

MOUNT, J.—This action was brought by the plaintiff to enforce specific performance of a contract. Upon the trial of the case to the court without a jury, a decree was entered substantially as prayed for in the complaint. The defendants Hathaway and wife have appealed.

The contract sued upon is as follows:

"Articles of agreement, made and entered into by and between O. B. Hathaway and Dolla Hathaway, husband and

[1]Reported in 119 Pac. 804.

wife, of Clarke county, state of Washington, the parties of the first part, and C. D. Charles, trustee, of the county of Multnomah, state of Oregon, the party of the second part; Witnesseth: That said parties of the first part hereby covenant and agree, that if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part, to be made and performed, the said parties of the first part will convey and assure to the party of the second part, in fee simple, clear of all incumbrances whatever, by a general warranty deed, the following described real property situated, lying and being in the county of Clarke and state of Washington, to wit: [Then follows a description of 469 acres of land] and the said party of the second part hereby covenants and agrees to pay to said parties of the first part the sum of thirty-five thousand ($35,000) dollars in the manner following: $20 no-1-100ths (Twenty Dollars) cash in hand paid, the receipt whereof is hereby acknowledged by said parties of the first part; $5,000 no-1-100ths (Five Thousand Dollars) on or before the 1st day of September, 1906, and the balance of $29,980 no-1-100ths (Twenty-nine Thousand Nine Hundred Eighty Dollars) on or before the 1st day of January, 1908. It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties. It is mutually agreed also that if the tract first hereinbefore described contains less than 400 acres, a corresponding deduction of $75.00 per acre shall be made from the full purchase price aforesaid. It witness whereof the parties to these presents have hereunto set their hands and seals this 18th day of June, 1906."

This agreement was duly signed by all the parties to it, and was acknowledged and delivered, and was recorded in the record of deeds for Clarke county, Washington, where the land is situated. It is conceded that the first two payments were made as they became due. It is also admitted that there was a mortgage of $2,000 upon the premises at the time the contract was made, which mortgage has not yet been satisfied. It is also admitted that the plaintiff is the successor in interest of C. D. Charles, trustee, with whom

the contract was made, and that the final payment was not made when it became due; but in October, 1908, plaintiff requested a deed which was refused, and in February, 1909, plaintiff made a formal tender of the balance due with interest, and demanded the deed in compliance with the terms of the contract, which defendants refused. Defendants made no offer to return the purchase money paid, and did nothing to put the plaintiff in default. Mr. Hathaway testified that in April, 1908, some four months after the date fixed in the contract for final payment of the balance due, he was willing to comply with the contract, but made no offer to do so. In fact, after the final payment became due, neither party seems to have made any move until about the time the tender was made as above stated. This action was begun in March, 1909. The defendants in their answer to the complaint alleged that time was of the essence of the contract, and that the payments made were to be forfeited in case final payment was not made as agreed; but by mutual mistake these provisions were omitted, and the prayer was for a revision of the contract in this respect. This defense, however, was abandoned at the trial, and the defense relied upon here now is that, after the first two payments were made, the contract was abandoned by all the parties to it and their assigns.

It appears from the evidence in the case that, before the second payment of $5,000 became due, the contract was assigned by C. D. Charles, trustee, to the Oregon, Washington & Idaho Finance Company, a corporation. This corporation borrowed $8,000 of certain citizens residing at Vancouver, Washington, near where the land was located. This contract and others of the same nature were deposited with a trustee as security for the repayment of the loan. Five thousand dollars of the money so borrowed was paid upon this contract, and the remainder of the $8,000 was used to pay debts of the corporation. The $8,000 note was not paid when it matured, and some of the persons who had participated in

the loan thought the corporation would not be able to repay the loan. But no demand was made for their money until July, 1908. Soon after demand was made, the note was paid with interest. Before this time, however, Mr. Hathaway consulted some of those persons to find out what he should do to remove the cloud from his title, and was advised to bring a suit for that purpose. But this was not done, and no tender or deed or offer to perform was made by the defendants so as to put the plaintiff in default. While it is true that the corporation named did not have sufficient money to meet these obligations, it is clearly established that it had credit and that its stockholders stood ready at any time to advance money to meet all its obligations, and that as soon as a demand was made for the amount due on the $8,000 note for which this contract was held as security, the money was forthcoming.

It is said that the property has largely increased in value since the date of the contract. Some of the witnesses placed the value at the time of the trial at $40,000, and others as high as $200,000. It is apparent that the property has at all times been worth as much as or more than the price fixed in the contract. We are satisfied that there has been no abandonment of the contract by the plaintiff or the corporation from which he obtained it. It is true that the final payment was not made when it became due, and no offer to pay was made for several months thereafter, but no demand for payment or offer to convey the title was made by defendants so as to put the plaintiff in default. In the case of *Reese v. Westfield*, 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956, we said:

"If the case of *Stein v. Waddell* and the succeeding cases to which we have referred have been hitherto misunderstood, we desire now, for the sake of certainty, to lay down the rule that, where land is sold under a time contract calling for payment by installments, and every installment has been paid except the last one, the vendor may, if he act with reasonable promptness, declare a forfeiture, unless by the

terms of the contract he has agreed to perform some act necessary to the complete performance of his agreement, as, for instance, the giving of an abstract or the tender of a deed, in which event his power to forfeit depends upon his offer and ability to perform; for, as this court has said, his duty to tender performance depends upon, and is concurrent with, the duty of the vendee to meet the final payment."

In *Tacoma Water Supply Co. v. Dumermuth*, 51 Wash. 609, 99 Pac. 741, we said:

"After the respondents acquired their deed from the state, their obligation to convey and the obligation on the part of the purchaser to pay the purchase price became mutual, concurrent and dependent and neither party could thereafter put the other in default or claim a forfeiture without first tendering performance on his part; and this, whether the contract contained a forfeiture clause or not. *Mudgett v. Clay*, 5 Wash. 103, 31 Pac. 424; *Underwood v. Tew*, 7 Wash. 297, 34 Pac. 1100; *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184; *Melick v. Cross*, 62 N. J. Eq. 545, 51 Atl. 16; 2 Warvelle, Vendors, p. 824. Under the above authorities, the respondents could only claim a forfeiture and put the appellant in default by tendering a deed and demanding payment of the purchase price . . ."

The contract in this case contained no forfeiture clause. Five thousand and twenty dollars, a substantial sum, had been paid on the purchase price of the land. It would seem equitable that some notice should be given to the vendee by the vendor before he would be permitted to forfeit the contract and keep the land and money too, when there was no provision in the contract that time was of the essence of it. The contract provided that the vendor would "convey and assure to the party of the second part in fee simple, clear of all incumbrances whatever," the real property. It appears that the property was at that time, and ever since has been, incumbered by a mortgage. The defendants therefore have not been in position to tender the deed they had agreed to give.

It is argued by appellant that, "where a vendee delays in completing a contract in order that he may speculate upon

the chances of business proving to be an advantageous bargain or that through rise in value or other changes of circumstances his gain may be assured, and then when he is thus certain it will be a fortunate speculation, offers to perform and sues to compel a conveyance by the vendor, a court of equity will refuse to grant him the remedy even though he may have at an earlier day paid a part of the purchase price." This is not an inflexible rule. It applies, of course, where the equities of the case demand its application, and where the vendor himself has not been at fault. But if the vendor, by agreement or inaction, acquiesces in delay, or is attempting himself to take advantage of the same circumstances, it is plain the rule would not apply. In *Conner v. Clapp*, 42 Wash. 642, 85 Pac. 342, we said:

"The respondents complain that the property has increased in value, and that the appellant is only seeking to take advantage of said increase. Undoubtedly this circumstance is a source of much litigation; but we might well ask, are not the respondents prompted by the same motive in their defense? Had the value of this property decreased below the amount due on the bond for a deed, would the respondents be now resisting specific performance?"

Mr. Hathaway testified that he was perfectly willing to comply with the contract after the date when the last payment became due, but a few months later when the value began to increase rapidly he was not willing to do so. In short, when he might have repudiated the contract simply because the payment was not made on time, he neglected to do so; but after values began to increase, he refused to perform. The reason is obvious.

It is also argued that the contract is void because it was assigned to a corporation not authorized to do business in this state, and because the plaintiff is not the real party in interest and therefore not entitled to maintain this action. There is no showing upon the record to justify either of these contentions.

We are satisfied from the whole record the judgment should be affirmed. It is so ordered.

DUNBAR, C. J., PARKER, and FULLERTON, JJ., concur.