# TUCKER *et al.* v. THRAVES.

No. 3936. Opinion Filed June 1, 1915.

Rehearing Denied September 7, 1915.

(151 Pac. 598.)

1.  **APPEAL AND ERROR—Disposition of Cause on Appeal—Evidence.** In a case purely of equitable cognizance, where the parties are not entitled to a jury, this court has on appeal the power to go into and examine the evidence, and, where the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as the trial court should have rendered.

2.  **VENDOR AND PURCHASER—Rescission—Notice—Sufficiency.** In an action for specific performance of contract, the defense is made that plaintiffs unreasonably delayed tender of performance until the lands involved had considerably appreciated in value, with a view of speculating on the chances of its proving advantageous to them, and the further defense was made that the defendant had rescinded the contract after reasonable notice. **Held** that, under the facts and circumstances in this case, the time given in the notice was insufficient for the proper closing of the transaction, and the same amounted to an arbitrary and sudden attempt to terminate the negotiations.

3.  **TIME—Holidays—Performance on Succeeding Day.** Whenever any act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, such act may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed.

4.  **VENDOR AND PURCHASER—Conditions Precedent—Tender of Performance—Sufficiency.** Where a contract for the sale of lands provides for the payment of the purchase price upon the approval of certain abstracts and the execution and delivery of a deed either party, in order to put the other in default, must make a tender of performance, and the depositing of such deed in a bank, not designated by the contract, is not a tender of performance.

5.  **SAME.** Where time is not of the essence of a contract for sale of lands, and such contract contemplates the conveyance of good title, the seller cannot place the purchaser in default by a tender of conveyance. so long as there are outstanding mortgages remaining unsatisfied of record.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by W. B. Tucker and another against W. V. Thraves. Judgment for defendant, and plaintiffs bring error. Reversed, with instructions.

See, also, 45 Okla. 209, 145 Pac. 784.

*W. J. Campbell,* for plaintiffs in error.

*J. A. Tillotson, W. A. Chase, W. M. Justis, Jr.,* and *W. A. Sipe,* for defendant in error.

Opinion by RITTENHOUSE, C. On February 1, 1911, W. V. Thraves, defendant, sold to Wm. B. Tucker and E. H. Hess, plaintiffs, the W. ½ of the N. W. ¼ of the N. W. ¼ of section 18, township 27 N., range 15 E., containing 20 acres, more or less, known as the Betsy Sam allotment, and also the N. W. ¼ of the S. W. ¼ and the W. ½ of the S. E. ¼ of the S. W. ¼ of section 18, township 27 N., range 15 E., containing 60 acres, known as the Jeanette Boles allotment, for the sum of $6,500. The sum of $100 was in hand paid to bind the contract until the abstracts on said property were brought down to date and the same approved, at which time the said property was to be paid for in full. The abstracts consisted of approximately 400 pages, and were delivered to plaintiffs by defendant on or about February 14, 1911, who took them to their attorney at Coffeyville, Kan., for examination. The attorney reported that there were two mortgages on these premises, to the First National Bank of Coffeyville, Kan., in the sum of $2,100 and $1,050, respectively, and certain other defects, which defects could be cured by procuring deeds from the allottees. This was accomplished, and the deeds recorded in Nowata county. Three days after the abstracts were delivered by

defendant, he notified plaintiffs that unless the purchase price was paid by the next day he would rescind the contract. The purchase price was not paid on the 18th, and on the 20th day of the same month defendant informed plaintiffs that they had broken their contract and defendant was no longer bound thereby, but would give plaintiffs until February 21st to approve or reject the title to the said lands and either decline to take said lands or to pay over the purchase price. On the 21st defendant informed plaintiffs that he had canceled the agreement on account of a breach thereof, but, if they would pay the purchase price by the morning of February 22d, the same would be accepted. No action was taken on the 22d, but on the 23d plaintiffs tendered to defendant the purchase price in full, which was refused, on the ground that the contract had been previously rescinded. It appears from the record that on the day defendant claims to have rescinded the contract an oil well was drilled in on the adjoining land and greatly enhanced the value of the premises in controversy. The record further shows that, soon after the execution of the contract, Thraves executed a general warranty deed to said premises and deposited the same in escrow in the Nowata National Bank, together with a release of both mortgages, which were so deposited in said bank prior to February 14, 1911. At the trial of this cause the court found in favor of defendant.

It is contended by defendant that this court is bound by the findings and judgment of the trial court, if there is any evidence reasonably tending to support the judgment, and that this court cannot go into the record further than to ascertain this fact. We concede this rule to be true in all actions at law; but where the action is one of equitable cognizance it is the duty of this court to con-

sider the whole record and to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as the trial court should have rendered. It was said in *Shock v. Fish,* 45 Okla. 12, 144 Pac. 584: .

"* * * The true rule, and which should be recognized by this court, is, in all cases which were cognizable only in a court of chancery, it is the duty of this court to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered."

In the case of *Wimberly v. Winstock et al.,* 46 Okla. 645, 149 Pac. 238, it was said:

"In a case, purely of equity cognizance, where the parties are not entitled to a jury, this court has, on appeal, the power to go into and examine the evidence; and when the judgment of the trial court is clearly against the weight of same, render, or cause to be rendered, such judgment as the trial court should have rendered."

The sole issue in this case is whether plaintiffs unreasonably delayed tender of performance on their part' until the land involved had considerably appreciated in value, with the object of speculating on it at the risk of defendant. Time was not of the essence of the contract. Subsequent to the execution of this contract, notice was given to plaintiffs limiting the time within which the purchase price was to be paid, and the question now before us is whether the notice gave to the plaintiffs a reasonable time in which to comply with the contract according to all the facts and circumstances in the case. It is therefore necessary for us to consider such facts and circumstances before we can say, with the trial court,

that there was such an unreasonable delay as to indicate an intention to speculate at the risk of defendant. The contract was entered into on February 1, 1911. Abstracts were prepared and furnished to plaintiffs on February 14th. These abstracts contained approximately 400 pages, and by the terms of the contract the purchase price was to be paid in full when the abstracts were "brought down to date and same approved." Three days after this abstract was furnished, defendant insisted on full payment by the next day, threatening to declare a rescission of the contract in case of a failure to comply with such request. Several other verbal notices were given along the same line. On the 21st day of the same month, notice was given that, unless the purchase price was paid in full by the 22d day of said month, the contract would be rescinded. On the 23d day of February, 1911, which was just 22 days after the contract was entered into, and nine days after plaintiffs had procured abstracts of title, plaintiffs tendered the purchase price in full, which was refused, on the ground that the contract had been rescinded on the day before on account of an unreasonable delay in the performance of the conditions thereof.

It is admitted that this land was valuable for oil purposes, and on the day of the attempted rescission by defendant a large oil well had been drilled in on land adjacent to that in controversy, which materially increased its value. It must be borne in mind that this property consisted of two tracts of land. The title to a part thereof was based upon court proceedings requiring an abstract of some 400 pages. The attorney who examined the abstract found a defect in the title which made it necessary to procure an additional deed in order to cure the defect, and such deed was afterwards procured. The trial court

held that the plaintiffs herein, after the execution of the contract, did not attempt to close the deal within a reasonable lengh of time and were guilty of inexcusable delay in fulfilling their part of the contract, and that such delay indicated an intention on the part of plaintiffs to speculate at the risk of defendant, thereby reserving the right to withdraw from the terms of the contract, should the premises prove of less value than that mentioned in the contract. In this holding we cannot agree. The time given by defendant within which the abstracts were to be approved was not reasonable, according to the facts and circumstances in the case. The time named in the notice must be sufficient for the proper closing of the transaction, and neither party will be permitted to arbitrarily and suddenly terminate the negotiations.

It is said in Pomeroy on Specific Performance of Contracts (2d Ed.) at section 395:

"As the doctrine that time is not essential in the performance of a contract may sometimes work injustice, and be used as the execuse for unwarrantable laches, the following rule was introduced at a comparatively late period, and is now firmly settled, which prevents the doctrine from being abused by the neglect or willfulness of either party. If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act within this period. The time thus allotted then becomes essential, and if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy."

And at section 396 the same authority says:

"The notice cannot be an arbitrary and sudden termination of the transaction; it cannot put an immediate end to a pending dispute or negotiation as to the title; it must allow a reasonable length of time for the other party to perform, and, if. it fails in any of these respects, it may be disregarded, and will produce no effect upon the equitable remedial rights of the party to whom it is given.   *   *   *"

It is said in 3 Elliott on Contracts, section 2329:

"Where time is not made the essence of the contract, delay of plaintiff in furnishing title to defendant will not relieve defendant of his duty to perform his contract. But in such case the party delaying is entitled to reasonable notice that performance must be made by a certain time."

See Waterman on Specific Performance, section 456; *Reid v. Mix,* 63 Kan. 745, 66 Pac. 1021, 55 L. R. A. 706; *Roberts v. Braffett,* 33 Utah, 53, 92 Pac. 789.

Independent of the view that the attempted rescission amounted to an arbitrary and sudden termination of the negotiations, the decision is erroneous on another vital point. The defendant alleged and proved that on February 21, 1911, he notified plaintiffs that the purchase price must be paid by the following morning, and it was attempted to be proved that this was acquiesced in by plaintiffs. The purchase price was not paid at that time, but on February 23, 1911, a tender of the purchase price was made to defendant, which was refused. The 22d day of February, under section 2923, Rev. Laws of 1910, is a holiday, and by section 2937, Rev. Laws of 1910, it is provided that:

"Whenever any act of a secular nature, other than a work of. necessity or mercy, is appointed by law or contract to be performed upon a particular day, which day

falls upon a holiday, such act may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed."

It is contended by defendant that this section is not applicable to the facts under consideration, citing the case of *McLaughlin v. Houston-Hudson Lbr. Co. et al.*, 31 Okla. 182, 120 Pac. 659, 38 L. R. A. (N. S.) 248, wherein the court held that a sale of lands made by a sheriff on a day not named in the notice was illegal, and should be set aside, notwithstanding the fact that the day came on Labor Day and the sale was held the day following. This case has no application to the question under consideration. The time set for the sale of lands was not appointed by law or contract to be performed upon a particular day, but was a day arbitrarily set by those conducting the sale, and the court in that case said that the time for the sale of the property was not appointed by law or contract for that particular day. In the instant case defendant contended there was a contract that the sale should be consummated on the 22d day of February. Taking his view that there was a contract, and construing it under section 2937, we find that it was an act of a secular nature; that it was appointed by contract to be performed upon February 22, 1911; that said day was a holiday under section 2932, *supra;* that on the following day, which was February 23d, and which was the next business day, plaintiffs tendered the full purchase price under the contract. It was to meet this class of cases that gave rise to the passage of the foregoing section. Banks ordinarily close on holidays, and if the bank which held the deeds and releases or the bank from which plaintiffs were to procure their money had followed the usual custom of banks in this state in closing on legal holidays, neither could have performed the conditions, the

plaintiffs in procuring the money or the defendant in delivering the deeds and releases, and the Legislature, contemplating conditions of this character, provided that such contract might be performed upon the next busines day.

It is next contended that while, by the terms of the contract, time was not made the essence thereof, it could, nevertheless, be made so by tender of performance by defendant. The evidence is that the deeds, together with the releases of mortgages, were deposited in escrow in the Nowata National Bank, and the court found this was a tender of the conveyance under the terms of the contract. The contract did not provide that the deeds and releases should be deposited in escrow; this idea originated with defendant, without the consent of plaintiffs. If defendant had desired to place plaintiffs in default, he should have first tendered performance of his part of the contract. A deposit of these conveyances in a bank not designated by the contract does not constitute in law a tender of performance. Pomeroy on Specific Performance of Contracts, sections 361, 362; 3 Elliott on Contracts, sections 2332, 2333; *Roberts v. Braffett, supra; Roberts v. Yaw,* 62 Kan. 43, 61 Pac. 409. *Sheets v. Hocker,* 34 Okla. 676, 128 Pac. 725.

In the case of *Kirby v. Harrison et al.,* 2 Ohio St. 326, 59 Am. Dec. 677, the court said:

"Although there is no stipulation of the parties that time shall be of the essence of the contract, nor anything in the nature or circumstances of the agreement to make it so, yet it may be made essential by the proper action of a party who is not in default and is ready to perform, if the other party is in default without justification. Thus, if the vendee, without sufficient excuse, fail to pay at the stipulated time, and the vendor is in no default, and is

able and ready to perform all that the contract then requires of him, he may notify the vendee to pay within a reasonable time, or he [the vendor] will consider and treat the contract as rescinded. In such case, if payment be not made within a reasonable time, the vendor has a right to treat the contract as abandoned by the vendee. In like manner, and with like consequences, the vendee may notify the vendor, if the latter is in default and the former is not. *Rummington v. Kelley,* 7 Ohio (pt. 2) 97; *Higby v. Whittaker,* 8 Ohio, 201."

In *Howard v. Higgins,* 137 Cal. 227, 69 Pac. 1060, it was said:

"Neither party can put the other in default without first having performed, or tendered performance, of his part of the contract. The offer before the final submission of the case relied on by appellants—even if the tender of a deed after suit commenced could, in any event, be deemed sufficient—was not the tender of a deed to respondents; it was a mere offer to execute a deed and 'place it in the hands of the judge of this court,' and not a tender of an executed deed to respondents."

In *Maffett v. Oregon & Cal. R. Co.,* 46 Or. 443, 80 Pac. 489, it was held:

"A vendor who has once waived a forfeiture incurred by the terms of a contract for the sale of land cannot ordinarily again assume his original relations to the vendee, and insist upon the enforcement of the forfeiture, without giving the vendee proper notice of his intention so to do, and reasonable time within which to comply with the demand for payment."

It is held in *Claude v. Richardson,* 127 Iowa, 623, 103 N. W. 991, that:

"Where an agreement to purchase land provides for payment upon the execution and delivery of the deed and abstract, either party must make a tender, to put the other in default."

In *Darrow v. Cornell et al.*, 30 App. Div. 115, 51 N. Y. Supp. 828, the court held:

"A tender of conveyances of title of land under an agreement to convey should be made at the vendee's residence, or the place specifically agreed, and tender to his attorney is bad."

In the case of *Tacoma Water Supply Co. v. Dumermuth*, 51 Wash. 609, 99 Pac. 741, the court said:

"After the respondents acquired their deed from the state, their obligation to convey and the obligation on the part of the purchaser to pay the purchase price became mutual, concurrent, and dependent, and neither party could thereafter put the other in default, or claim a forfeiture without first tendering performance on his part, and this whether the contract contained a forfeiture clause or not. *Mudgett v. Clay*, 5 Wash. 103, 31 Pac. 424; *Underwood v. Tew*, 7 Wash 297, 34 Pac. 1100; *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184; *Melick v. Cross*, 62 N. J. Eq. 545, 51 Atl. 16; 2 Warvelle, Vendors, p. 824. Under the above authorities, the respondents could only claim a forfeiture and put the appellant in default by tendering a deed and demanding payment of the purchase price.    *   *   *"

In *Katz v. Hathaway*, 66 Wash. 355, 119 Pac. 804, the Supreme Court of Washington held:

"It is true that the final payment was not made when it became due, and no offer to pay was made for several months thereafter, but no demand for payment or offer to convey the title was made by defendants so as to put the plaintiff in default."

There were two mortgages against this property in favor of the First National Bank of Coffeyville, Kan., for $2,100 and $1,050, respectively. The abstracts furnished by defendant on the 14th day of February, 1911, did not

show that these mortgages were released, nor is there any evidence that the same have since been released. Defendant contends that he deposited the releases with the Nowata National Bank. This cannot excuse him for a failure to tender a title free from incumbrances in order to place plaintiffs in default. The proper place to deposit releases of real estate mortgages is with the register of deeds, and until that was done he was in no position to claim performance of his part of the contract, as the contract contemplates title free from incumbrances.

In *Campbell v. Harsh*, 31 Okla. 436, 122 Pac. 127, it is said:

"A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record."

In *Spooner v. Cross*, 127 Iowa, 259, 102 N. W. 1118, it was said:

"The statement of a vendor, who agreed to furnish an abstract showing good title, that he had a release of land from a mortgage, did not relieve him from the obligation to have it recorded and exemplified on the abstract."

See *Hobart v. Freder ksen*, 20 S. D. 248, 105 N. W. 168; *Redman v. Adams*, 165 Mo. 60, 65 S. W. 300; *Davis v. Baroda-Ghio Real Estate Co.*, 115 Mo. App. 327, 92 S. W. 113; *Swan v. Drury*, 22 Pick. (Mass.) 485; *Tavenner v. Barrett*, 21 W. Va. 656; *Turner v. Walker*, 40 Misc. Rep. 379, 82 N. Y. Supp 340; *McAllister v. Harman*, 101 Va. 17, 42 S. E. 920; *Weaver v. Richards*, 144 Mich. 395, 108 N. W. 382, 6 L. R. A. (N. S.) 855; *Barnard v. Brown*, 112 Mich. 452, 70 N. W. 1038, 67 Am. St. Rep. 432; *Thompson v. Dickerson*, 68 Mo. App. 535; *Katz v. Hathaway, supra*.

This cause should therefore be reversed, and the trial court ordered to render judgment in conformity with this opinion.

By the Court: It is so ordered.