**GORMAN et al. v. CARLOCK et al.**

No. 7165—Opinion Filed Feb. 25, 1919.

(179 Pac. 38.)

(Syllabus.)

1. **Jury — Issues of Fact — Trial by Court —Statute.**

Issues of fact arising in a civil action, other than one for the recovery of money, or of specific real or personal property, are triable to the court, subject to its power to order any issue or issues to be tried by a jury or referred, as provided in the Code.

2. **Same — Accounting.**

An action to establish a partnership, declare a trust in an oil and gas lease, and for an accounting, is triable to the court.

3. **Appeal and Error—Sufficiency of Evidence—Duty of Supreme Court.**

In a civil action, where the parties are not entitled to a trial by jury as a matter of right, and where the sufficiency of the evidence to sustain the judgment is challenged, it is the duty of this court to consider the whole record, to weigh the evidence; and if the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as the trial court should have rendered.

4. **Trial — Trial to Court — Reference to Jury.**

In a civil action, where the parties are not entitled to a trial by jury, the court may call a jury or consent to one for the purpose of advising him on questions of fact, and he may adopt or reject their conclusions, as he sees fit. It is not only the right, but the duty, of the court in such cases to finally determine all questions of fact as well as of law.

5. **Duration of Partnership—Statute.**

If no term is prescribed by agreement for its duration, a general partnership continues until dissolved by a partner, or by operation of law. Section 4458, Rev. Laws 1910.

6. **Dissolution of Partnership—Statute.**

A general partnership may be dissolved as to all the partners by the express will of any partner, where there is no time prescribed by agreement for its duration. Section 4459, Rev. Laws 1910.

7. **Trial — Appeal and Error — Trial to Court — Finding — Affirmance.**

In a civil action, triable to the court, where the finding of the court is general, such finding is a finding of each special thing necessary to sustain the general finding; and where such finding is not clearly against the weight of the evidence, the judgment will be affirmed.

8. **Partnership — Relation — Community Interest.**

A mere community of interest as owners of specific property, or of the profits from a particular adventure or business, does not necessarily, of itself, constitute the co-owners partners.

**9. Partnership — Action for Accounting — Judgment—Evidence.**

Evidence in this case examined, and the judgment of the trial court held not to be clearly against the weight of the evidence.

Error from District Court, Carter County; A. Eddleman, Judge.

Action by M. Gorman and J. E. McCarty against John H. Carlock and John R. Dexter. Judgment for defendants, motion for new trial overruled, and plaintiffs bring error. Affirmed.

Harreld & Ward and Johnson & McGill, for plaintiffs in error.

J. B. Moore, Cruce & Potter, and Stuart, Cruce & Riddle, for defendants in error.

RAINEY, J. This action was instituted in the district court of Carter county by M. Gorman and J. E. McCarty, as plaintiffs, against John Carlock and John R. Dexter, defendants. The plaintiffs' petition alleged that a partnership existed between the plaintiffs and the defendants with reference to oil and gas leases in what is known as the Healdton oil field: that a certain lease, known as the William Tillis lease, was taken in the name of John H. Carlock, one of the defendants, but was a part of the partnership property and prayed that the defendants be adjudged to hold said lease in trust for the partnership, and for an accounting and a distribution of the partnership assets. The defendants, in their answer, which was verified, denied that any partnership was ever formed or entered into between the plaintiffs and the defendants.

It appears from the record in this case that the first well in the Healdton field was brought in early in August, 1913, at which time the plaintiffs, who were in the real estate business, became interested in securing oil and gas leases on lands that appeared to them likely to be in the oil-producing area. The defendants, who were also in the real estate business, likewise became interested and active in taking leases in the same territory. According to the plaintiffs' testimony, about this time Mr. Dexter approached the plaintiffs and suggested that it would probably be mutually advantageous for them all to go in together to secure oil leases in the field, and that after all four had talked the matter over they agreed to work together in securing leases, to share the expenses equally, and to share the profits or losses equally: that Mr. Dexter was to keep the books; that they each put up $50, and were to put up more money if it was needed;

that a number of leases were acquired between the 12th of August and the date of taking the Tillis lease, on the 27th day of August, 1913; that said lease was taken by Mr. Carlock, in his own name, from one William Tillis, a full-blood Choctaw Indian, on a departmental form, which, upon application, was approved by the Secretary of Interior as was provided by law, and that the plaintiffs did not learn until about February, 1914, that this lease had been taken. Plaintiffs further testified that when they discovered Carlock had taken this lease in his own name they inquired of him why he had not turned it in, and that he answered that it was procured a long time after they quit taking leases together.

The account kept by Mr. Dexter was entitled: "McCarty, Gorman, Carlock Oil Leases." The first entry on the account was August 15, 1913, and various items of expense occurred in obtaining leases executed prior to the Tillis lease were entered in the account up to and including October 28, 1913, but the cost and expenses of procuring the Tillis lease were not charged in this account.

According to the testimony of the defendants, there was no agreement between them and the plaintiffs that they would go in together on all leases taken in the Healdton field, but the agreement was that the plaintiffs and the defendants were only to be equally interested in such leases as were submitted to each other and all agreed to acquire, and that before the Tillis lease was taken, plaintiffs informed defendants that inasmuch as they had leases in every direction from the discovery well that they did not want an interest in any more leases. There is also evidence in the record that defendants became interested with other parties in leases in the same field during the existence of the alleged partnership, and that the plaintiffs became interested in leases with other parties in the early part of the following year. In one lease the four became co-owners with three other parties. The defendants testified that in November, 1913, Mr. Dexter traded Mr. Carlock a one-half interest in 30 acres of land in the field for a one-half interest in the Tillis lease.

During the trial the court impaneled a jury and submitted to it three certain interrogatories, which, together with the answers thereto, are as follows:

'1. Was there a partnership formed between Gorman, McCarty, Carlock, and Dexter to acquire oil and gas leases? A. Yes.

"2. When was such partnership formed? A. August 12, 1913.

"3. Was such partnership in force on the 27th day of August, 1913, at the time the William Tillis lease was acquired by John H. Carlock? A. No."

The court did not make special findings of fact or conclusions of law, but the judgment in defendants' favor contains the following recital:

"And it appearing to the court that said special requested charges were requested and agreed to by both the plaintiffs and defendants, and that the question or right to have a general verdict returned herein was waived by both parties thereto, and the court being sufficiently advised in the whole premises doth adopt the finding of the jury that there was no partnership existing between plaintiffs and the defendants on the 27th day of August, 1913, at the time the William Tillis lease was taken by John H. Carlock, which said lease is the one that is in controversy herein; and doth find that plaintiffs, M. Gorman and J. E. McCarty, had no interest therein."

A motion for a new trial was filed and overruled, to review which action the plaintiffs have appealed to this court. The parties will hereinafter be designated as plaintiffs and defendants, according to their respective titles in the trial court.

In their brief, counsel for plaintiffs discuss only the first, sixth, seventh, and ninth assignments of error under the following proposition:

"The partnership agreement was in full force and effect when the William Tillis lease was taken by Carlock, and said lease, therefore, belongs to the partnership."

Asserting that the action is one in which the parties were not entitled to a trial by jury, counsel for plaintiffs insist that we examine the evidence and reverse the judgment on the ground that it is contrary to the evidence and inconsistent with the findings that a partnership was formed on August 12, 1913.

The action is not one for the recovery of money, or of specific real or personal property, but is an action for the dissolution of an alleged partnership, to declare a trust, and for an accounting. We do not agree with counsel for defendants that in every case where the existence of a partnership is at issue either party is entitled to a jury trial as a matter of right. Our Code clearly contemplates that issues of fact are to be determined by the court, except in civil actions for the recovery of money or of specific real or personal property, subject to the court's power to order any issue or issues to be tried by a jury, or referred as provided in the Code. Sections 4993, 4994, Rev. Laws 1910; Childs v. Cook, 68 Okla. 240, 174 Pac. 274.

We concur then with counsel for plaintiffs that this action is one in which it is the duty of this court to examine and consider the whole record, to weigh the evidence, and if the judgment of the trial court is found to be clearly against the weight of the evidence it is our duty to render, or cause to be rendered, such judgment as the trial court should have rendered in the first instance. Shock et al. v. Fish, 45 Okla. 12, 144 Pac. 584; Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238; Tucker et al. v. Thraves, 50 Okla. 691, 151 Pac. 598; Johnson et al. v. Perry et al., 54 Okla. 23, 153 Pac. 289. And the rule applies, notwithstanding the fact that the court submitted certain interrogatories to the jury. In a civil action where the parties are not entitled to a jury trial as a matter of right the court in its discretion may submit interrogatories to the jury, but the answers thereto are only advisory, and the court may adopt or reject such findings as it sees fit. It is not only the right, but the duty, of the court in such cases to finally determine all questions of fact as well as of law. McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913C, 146; Kentucky Bank & Trust Co. et al. v. Prichett, 44 Okla. 87, 143 Pac. 338; Wah-tah-noh-zhe et al. v. Moore, 36 Okla. 631, 129 Pac. 877; Apache State Bank v. Daniels, 32 Okla. 121, 121 Pac. 237, 40 L. R. A. (N. S.) 901, Ann. Cas. 1914A, 520; Crump v. Lanham, 67 Okla. 33, 168 Pac. 43.

Counsel for plaintiffs assume that the court found a general partnership was entered into between the plaintiffs and the defendants, and thus entrenched, contend that such partnership is presumed to continue to exist until the contrary is shown, and that it devolved upon the defendants to show a lawful dissolution. Counsel seem to labor under the impression that the court adopted all the findings of the jury, the substance of the first two findings being that a general partnership was entered into between the parties on August 12, 1913. For the present we will treat the case from this standpoint, and the question then arises: Is the finding of the court that said partnership was not in existence on the date of the taking of the Tillis lease clearly against the weight of the evidence? It is not contended that the alleged partnership was to continue for any pre-

scribed or definite length of time, and under section 4458 of our Code, where no term is prescribed by agreement for its duration, a general partnership continues until dissolved by a partner or by operation of law. Under the second subdivision of section 4459, a general partnership may be dissolved as to all the partners by the expressed will of any partner in cases where there is no agreement that it continue for a prescribed term. It is evident that the court, in its finding that the partnership was not in force at the time of the taking of the lease involved in this controversy, weighed the evidence in the light of the above statutory provisions, for such rule was incorporated in the charge to the jury, and the court's conclusion is not only not clearly against the weight of the evidence, but on the contrary is amply supported by the evidence, for, as already stated, the defendants positively testified that before Mr. Carlock obtained the Tillis lease Mr. Gorman and Mr. McCarty informed them that they did not want in on any more leases. Although this testimony was just as positively contradicted by the testimony of the plaintiffs, it is readily seen that this question of fact was clearly within the province of the trial court to determine, and the testimony being in such hopeless conflict we cannot say the finding is clearly against the weight of the evidence. It appears from the answers to the interrogatories that the jurors were of the opinion that a general partnership was entered into, but that it was not in force at the time of the taking of the Tillis lease, and this was equivalent to finding that leases subsequently acquired by any of the parties were not to be included in the partnership property as testified to. in effect, by the defendants. Although the findings of the jury were only advisory. since the court concurred in the third finding that the partnership was not in force on the date of the taking of the Tillis lease, it is apparent that the jury, as well as the court, accorded the greater weight to the evidence of the defendants.

However, there is nothing in the record showing that the court adopted the findings of the jury on the questions submitted to it in the first and second interrogatories. The only part of the record that reveals the findings of the trial court on the questions in issue is the judgment rendered in the cause, and in that part above quoted the court expressly adopted the findings of the jury that there was no partnership existing between the plaintiffs and defendants at the time the William Tillis lease was taken by Mr. Carlock. The judgment for the defendants is general, and includes the finding in their favor of every special fact in issue necessary to sustain said judgment. Whether a general partnership in oil leases in the Healdton field was formed by the plaintiffs and defendants was the principal question at issue, and the general judgment for the defendants embraces the finding that such alleged partnership was never entered into between the parties. It is apparent that such finding is not clearly against the weight of the evidence, for, as heretofore stated, defendants testified that instead of their being a general partnership agreement the understanding was that the plaintiffs and defendants were to be co-owners and equally interested only in the particular leases that all agreed to take. It is a well-recognized principle of law that a mere community of interest as owners of specific property, or of the profits from a particular adventure or business, des not necessarily constitute the co-owners partners. 30 Cyc. 366.

From an examination of the entire record we are of the opinion that the trial court took the view as contended for by the defendants, that they were never general partners, and this conclusion is perfectly consistent with the recitals in the judgment "that there was no partnership existing between the plaintiffs and defendants on the 27th day of August, 1913, at the time the William Tillis lease was taken by John H. Carlock." If no general partnership had ever been entered into, certainly none existed when the Tillis lease was acquired by Carlock. The defendants' contention and the court's conclusion is entirely in accord with the general custom and manner of trading in oil and gas leases in this state. It is not an uncommon thing for parties to purchase small interests in divers and sundry leases with different persons. It frequently happens that one man is a co-owner in a number of oil leases, owning a different interest in each lease, and having different associates in each venture, or one or more of his associates may be interested in several of the ventures, but have a different interest in each lease, and we do not understand that because a party may be interested with two or three persons in one lease that when he acquires an interest with different persons in another lease or acquires another lease for himself, that the co-owners in the first lease become partners in all the leases acquired by said person. The prevailing custom in such cases seems to be that those interested in a particular lease share the expenses of procuring, and in some

cases also of developing, said leases, and share the profits or losses, as the case may be, in the adventure. The mere fact that plaintiffs and defendants were co-owners of several oil leases did not constitute them general partners as to all leases acquired by any of the four, and is not of sufficient weight to overcome the judgment of the trial court, supported as it is by the evidence of the defendants, especially in view of the undisputed fact that Mr. Carlock took the Tillis lease in his own name, paid for the same, caused it to be approved by the Department of the Interior, and that plaintiffs never asserted any interest therein until many months thereafter when said lease had greatly enhanced in value.

The judgment is therefore affirmed.

All the Justices concur.