**Gary DRAKE, Judy Drake, Raymond Eugene Smith, and Ben Simler, Appellants,**

v.

**PARK NEWSPAPERS OF NORTHEASTERN OKLAHOMA, INC., an Oklahoma Corporation, Appellee.**

No. 59336.

Supreme Court of Oklahoma.

July 17, 1984.

Earl W. Wolfe, Tulsa, for appellants.

Fred S. Nelson, Donald L. Kahl, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Inc., Tulsa, for appellee.

DOOLIN, Justice.

Plaintiffs below are brother, sister, husband and uncle of Virginia Lee Smith, deceased. The plaintiffs will hereinafter be referred to as the "relatives." The relatives brought an action against Park Newspapers of Northeastern Oklahoma, Inc. (newspaper), the owner and operator of the Broken Arrow Daily Ledger, wherein defamatory matter was allegedly published.

In their petition, the relatives of the decedent alleged that the newspaper had published libelous statements concerning the manner of the decedent's death. The statements were "designed to blacken or vilify the memory and reputation of the deceased ... and tended to scandalize the surviving relatives of the decedent who are the plaintiffs herein." The relatives demanded compensatory and punitive damages.

The defendant newspaper generally demurred to the petition. The trial court sustained the demurrer.

On appeal, the relatives contend that in Oklahoma, libelous statements about a dead person give rise to a cause of action in favor of the decedent's relatives. The newspaper argues that no civil action exists when a dead person is defamed, and that the petition therefore failed to state a cause of action. The statute is peculiar, for after defining liable as false, malicious, etc., it shifts to its alternative phases and states "... or any malicious publication, as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives and friends." It thus creates or requires a nexus between the vilified decedent and his scandalized surviving relatives and friends.

As an example the statute operates where one declares that a deceased uncle took as a lover his present living nephew, thus vilifying uncle and scandalizing his surviving living relatives.

The relatives rely on the definition of civil libel which is found at 12 O.S.1981, § 1441:

"Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead,

and tending to scandalize his surviving relatives or friends."

It is clear that no such action existed at common law. The Restatement of Torts (1938), § 560, states:

"One who falsely, and without a privilege to do so, publishes defamatory matter of a deceased person is not liable either to the estate of such person or to his decendants or relatives."

Likewise, the Restatement (Second) of Torts (1974), § 560, states:

"One who publishes defamatory matter concerning a deceased person is not liable either to the estate of the person or to his decendants or relatives."

*See also*, 50 Am.Jur.2d Libel & Slander, § 320; 53 C.J.S. Libel & Slander § 11.

Of course the legislature could have intended to create a cause of action in favor of the relatives by defining libel to include publications "designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends," 12 O.S.1981, § 1441, but many factors militate against that conclusion.

■ First, libel is one of the few actions which does not survive the death of a plaintiff who has been defamed in his own lifetime, 12 O.S.1981, § 1051, *Alles v. Interstate Power Co.*, 176 Okl. 252, 55 P.2d 751, (1936), and which abates on the death of the defendant. 12 O.S.1981, § 1052. It would be strange indeed for the legislature to create a cause of action for libel of a dead person, and then provide that a libel action does not survive the death of a defamed plaintiff and abates on the death of a defendant.

■ Second, 12 O.S.1981, § 1444.1, provides: "In all civil actions to recover damages for libel or slander, it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby." The petition in the instant action states

that the defamatory matter was written not of the plaintiffs, but of the plaintiffs' deceased relative. The failure of the legislature to provide for the bringing of libel actions by the relatives of defamed persons is crucial. The definition of libel found in § 1441 includes words "tending to scandalize [decedent's] surviving relatives or friends." If this definition is construed to create a cause of action in favor of a decedent's relatives, would it not also create a cause of action in favor of her friends? Which relatives and friends would be able to sue?

Third, the history of § 1441 indicates rather plainly that the legislature did not draft § 1441 with the intention of creating a sweeping new cause of action in favor of a defamed decedent's relatives and friends.

The original definition of *civil* libel in Oklahoma is found in Okla.Stat.1890, § 3985: "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." This is the entire definition; no mention is made of defamation of the dead.

The original definition of *criminal* libel is found at Okla.Stat.1890, § 2156: "A libel is the malicious defamation of a person made public by printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or subject him to public hatred, contempt of ridicule, or to deprive him of the benefit of public confidence and social intercourse, or injury him in his business, or any malicious defamation made public as aforesaid designed to blacken or vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends."

The criminal libel definition was altered slightly in 1895 by the Oklahoma Territory Legislative Assembly, in the Act of March 5, 1895, Ch. 33, Laws 1895, p. 163. The

legislature *specifically* changed the definition of *criminal* libel to read exactly as our current definitions of criminal *and* civil libel. *See* 21 O.S.1981, § 771; 12 O.S.1981, § 1444.1.

The legislature has *never specifically* amended the definition of *civil* libel. The 1890 definition of civil libel remained unchanged until it was discarded by the Code Commission in 1910.

The Code Commission was created by the legislature in 1909 to "collect, revise, annotate and reduce into one Act the different statutes." Comp.Laws 1909, § 8704. The Commissioners were "authorized to rearrange chapters; to renumber and transpose sections; to provide other and different headnotes; to omit the repealed and enacting provisions in existing statutes, and in every other respect to complete such revisal in such manner as to them shall seem most proper and needful to render said statutes plainer, and easier to be understood." *Id.* They were also authorized "to correct inaccuracies and conflicts and to harmonize the different parts of the statutes." *Id.*, § 8750.

The five-member Code Commission polarized into two camps. Both groups submitted a report to the 1910 legislature. The minority report was adopted by the 1911 legislature as the Revised Laws of 1910. Act of March 3, 1911, Ch. 39, Laws 1910–11, p. 70. In the Revised Laws of 1910, the two members constituting the minority group of the Code Commission had taken it upon themselves to eliminate the *civil* libel definition, and to replace it with the *criminal* libel definition. In an explanatory note to the *civil* libel definition, which was copied verbatim from the *criminal* libel definition, the Code Commission said:

"The definitions formerly carried in 'Crimes and Punishments,' having been amended in 1895, are used, as being the latest expression of the legislature on the subject, those [definitions of civil libel and slander] contained in the old chapter on 'Persons' having been adopted in 1890." Revised Laws 1910, § 4956.

Therefore when the legislature adopted the current definition of civil libel in 1911, the legislature was merely adopting an entire body of law as revised by the Code Commission, and not amending the civil libel definition with the specific purpose of creating a new cause of action for relatives and friends of deceased persons alleged to have been defamed. Act of March 3, 1911, Ch. 39, Laws 1910–11, p. 70.

Finally, other courts have held that defamation of the dead, while perhaps constituting a criminal offense, has never given rise to a cause of action in favor of relatives who were not personally defamed. In *Turner v. Crime Detective*, 34 F.Supp. 8 (N.D.Okl.1940), the court held that 12 O.S. § 1441 did not create a cause of action in favor of a defamed decedent's relatives. *See also Hager*, Civil Libel and Slander in Oklahoma, 2 Tulsa L.J. 1, 5 (1965), concluding that "the Legislature either inadvertently or unthinkingly carried over into the civil [libel] definition language which is out of context there."

In *Renfro Drug Co. v. Lawson*, 138 Tex. 434, 160 S.W.2d 246, 247 (1942), the court was called upon to answer this certified question: "Did the act of the Legislature of 1901, in defining civil libel so as to include the words 'tending to blacken the memory of the dead', thereby create by implication a cause of action in favor of a father, not injured in his own reputation, to recover damages for a defamation of his deceased daughter?" The Court said:

"In our opinion, an intention on the part of the legislature to create a cause of action in favor of one not injured in his own reputation is not reasonably implied from the enactment of a definition containing the phrase 'tending to blacken the memory of the dead' when all of the decisions that had passed on the question had denied the existence of such cause of action, although the same phrase was included in the common law, and generally approved, definition of libel."

160 S.W.2d 249. *Accord, Hughes v. New England Newspaper Publishing Co.*, 312 Mass. 178, 43 N.W.2d 657 (1942); *Skrocki v. Stahl*, 14 Cal.App. 1, 110 P. 957 (1910); *Lee v. Weston*, 402 N.E.2d 23 (Ind.App. 1980).

Plaintiffs in the instant case failed to allege that the defamatory matter was spoken at them, therefore they failed to state a cause of action. 12 O.S.1981, § 1444.1. The demurrer was properly sustained.

AFFIRMED.

BARNES, C.J., and LAVENDER, HARGRAVE and OPALA, JJ., concur.

SIMMS, V.C.J., and WILSON, J., concur in result.

HODGES and KAUGER, JJ., dissent.