1998 OK CIV APP 68

Glen MALSON and Virginia Malson, husband and wife, d/b/a M & M Drum Company, Plaintiffs/Appellants,

v.

PALMER BROADCASTING GROUP, a general partnership d/b/a/ KFOR–TV, and Brad Edwards, an individual, Defendants/Appellees.

No. 90132.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 30, 1998.

Rehearing Denied March 13, 1998.

Certiorari Denied May 20, 1998.

Victor R. Grider, Oklahoma City, for Plaintiffs/Appellants.

Robert D. Nelon, Oklahoma City, for Defendants/Appellees.

## MEMORANDUM OPINION

CARL B. JONES, Vice–Chief Judge:

¶1 On this second appeal of the plaintiffs' defamation case, the only issue we have to consider is whether the defendant television station's broadcasts defamed the sole surviving plaintiff. We hold there is a permissible inference of actionable defamation, and so reverse summary judgment entered by the trial court.

¶2 On August 5, 1993, KFOR–TV broadcast a story during its 10:00 p.m. newscast in a segment entitled "In Your Corner" which asserted that a company called "M & M Drum," in the course of its business of cleaning 55–gallon drums, had discharged hazardous substances into Oklahoma City's sewer system which might be a hazard either to public health or to the city's water treatment facilities. The story also related that M & M Drum had been cited by the City of Oklahoma City on two prior occasions for discharging deleterious substances into the city's water supply. Edwards attempted to interview Glenn Malson about the activities of M & M Drum, and found Malson asleep on the couch in his office. When Edwards pressed Mr. Malson for information about disposal of substances washed out of the drums, and about his claim that toxic residues were regularly picked up by a disposal company, Malson first asked to terminate the interview and then responded with obscene gestures.

¶3 Four days later, the station broadcast a follow-up story, repeating the charge that M & M Drum was dumping untreated hazardous substances into the city sewer system. The second story related an accusation by an unidentified source that Glenn Malson himself had placed toxic residues in the dumpster and concealed them with garbage. Mr. Malson was shown on camera refusing to let Edwards search the dumpster. Edwards stated in the second report (and included a supporting statement from an employee of the city's Water and Wastewater Treatment Division) that presence of hazardous substances in wastewater was "more an expense problem than a health hazard," because wastewater treatment plants had to remove those substances before releasing the water.

¶4 The Malsons commenced this action against KFOR–TV alleging the station had negligently and maliciously published untrue reports about them and had falsely accused them of breaking the law and endangering public health. In *Malson v. Palmer Broadcasting Group,* 1997 OK 42, 936 P.2d 940, the Oklahoma Supreme Court reversed summary judgment entered by the trial court in favor of the television station. There, as here, the parties agreed that in order to be held liable for publishing a false report affecting a private individual's reputation, the station would have to be at least negligent. *Malson,* 1997 OK 42 at ¶ 9, 936 P.2d at 942; *see Martin v. Griffin Television, Inc.,* 1976 OK 13, ¶ 23, 549 P.2d 85, 92. The court held there was a substantial controversy of material fact about whether the station had been negligent, because the Malsons had submitted an affidavit from their expert in response to KFOR–TV's motion, and endorsed the view that evidence of negligence with respect to customs and practices within the news industry would normally come from a qualified expert in the field. *See Malson,* 1997 OK 42 at ¶ 10, 936 P.2d at 942, citing Restatement (Second) of Torts § 580B, Comment *g* at 228 (1977).

¶5 Glenn Malson died in 1996. Shortly after issuance of mandate from the first appeal, KFOR–TV again moved for summary judgment. In the second motion, the station argued that Glenn's claim for defamation abated when he died, and that Virginia Malson had no claim for defamation because she was not mentioned in the broadcast reports and had no significant role in operating M & M Drum. The station thus argued that neither of its broadcasts were "published or spoken of" Virginia. 12 O.S.1991 § 1444.1. The trial court granted the station's motion

and again entered summary judgment in its favor.

¶6 Virginia agrees that Glenn Malson's claim for defamation did not survive his death. *See Drake v. Park Newspapers of Northeastern Oklahoma, Inc.*, 1984 OK 50, ¶9, 683 P.2d 1347, 1349. She contends, however, that she was more involved in operating M & M Drum than the station claimed, and therefore alleged false stories published by the station harmed her reputation as well as her husband's. She further contends that M & M Drum was a partnership, and that if the partnership was defamed by KFOR–TV's reports then she was defamed as a partner.[1]

■ ¶7 We find no evidence in the record to support Virginia's assertion that she and Glenn were partners in M & M Drum. Virginia averred in an affidavit that she owned half of M & M Drum, and succeeded to ownership of all of the company after Glenn died. In her affidavit, she also stated that on the night of the first broadcast and several days thereafter, friends called her to inquire about the report and the reasons therefor, from which she *concluded* that those friends "associated [her] with part ownership" of the company. Attached to her response were copies of a depreciation schedule from the Malsons' 1992 federal tax return, amended 1992 and original 1993 state tax returns, and amended federal tax return for 1993. None of these tax documents show income from a partnership (which must be separately reported on Schedule E of federal tax returns). The mere fact that Virginia owned half of the business or that she shared in profits and losses of the business does not create a partnership between her and Glenn.

*Gorman v. Carlock*, 72 Okla. 104, 179 P. 38, 41 (1919). The station in its motion for summary judgment cited Virginia's deposition testimony that she had no knowledge of M & M Drum's operations; all she did was to occasionally take checks to the bank. Virginia's response did not suggest that she had any greater role in the business, except that she took records to a tax preparer so the joint individual return she filed with Glenn could be done.[2]

■ ¶8 There remains, however, the question whether, aside from questions about the existence of a partnership, Virginia might have been defamed by the television station's reports about her husband and about their co-owned business. We are not satisfied that the evidentiary materials submitted by KFOR–TV, considered with Virginia's affidavit and the other evidentiary materials she submitted, exclude a reasonable inference that Virginia was defamed. We are not allowed to weigh the evidence in the summary judgment record; we must determine only whether, as dictated by the district court rules, there exists a substantial controversy as to any material fact or some other legal reason why judgment ought not to have been entered in favor of the prevailing party as a matter of law. Rule 13(e), Rules for District Courts, 12 O.S.Supp.1993, Ch. 2, App.

¶9 Nothing we have said in this opinion should be used to suggest that Virginia does or does not possess a cause of action against KFOR–TV. We hold only that the trial court erred, on the basis of the evidentiary materials in the record, by entering summary judgment in favor of KFOR–TV.

¶10 REVERSED AND REMANDED.

1. *See, e.g., Wilson v. Sun Pub. Co.*, 85 Wash. 503, 148 P. 774, 779 (1915) (defamatory statements published about restaurant operated by husband and wife as co-partners did not give rise to defamation action in favor of either of them as individuals, but as partners).

2. *Compare Johnson v. Wiley*, 613 N.E.2d 446, 450–51 (Ind.Ct.App.1993), in which the Indiana court stated:

Although mere joint tenancies in property do not, by themselves, establish a partnership, receipt by a person of a share of the profits is *prima facie* evidence that he/she is a partner in the business. [citation] Lack of daily involvement by one partner is not *per se* indicative of an absence of a partnership.

The evidence in *Johnson* showed that the wife performed services for the real estate concern she owned with her husband, and she was not compensated in the form of wages. She was co-owner and co-mortgagor of the building and land housing the company; she received the benefit of the principal reduction on the mortgage as payments were made; the joint tax returns placed into evidence showed that in 1989, 1990, and 1991, she and her husband shared in the net profits or net loss of the business, and she testified that they would equally share any tax refund or liability.

JOPLIN, P.J., concurs in part and dissents in part.

GARRETT, J., concurs.